[No. 11884-1. En Banc.]
Argued May 18, 2004. Decided November 24, 2004.

*In the Matter of the Disciplinary Proceeding Against* DIANE L. VANDERBEEK, *an Attorney at Law.*

66

68

IRELAND, JOHNSON, and MADSEN, JJ., dissent by separate opinion; SANDERS, J., did not participate in the disposition of this case.

*Diane L. VanDerbeek*, pro se.

*Kurt M. Bulmer*, for petitioner.

*Jonathan H. Burke*, for the Bar Association.

¶1 BRIDGE, J. — Attorney Diane L. VanDerbeek appeals the decision of the Washington State Bar Association (WSBA) Disciplinary Board (Board) to impose a two-year suspension for her billing and collection practices in violation of the Rules of Professional Conduct (RPC). VanDerbeek principally asserts that the hearing officer and Board wrongfully determined that disbarment was the presumptive sanction and that they failed to properly weigh the aggravating and mitigating factors. The WSBA supports the hearing officer's and Board's findings of fact and conclusions of law but argues that VanDerbeek should be disbarred. We affirm the hearing officer's and Board's conclusions in substantial part but agree with the WSBA that disbarment is the proper sanction.

# I

## STATEMENT OF FACTS

¶2 VanDerbeek graduated from law school in 1981. In 1986, she opened a solo practice in family law. Her husband, John VanDerbeek, managed her practice's bookkeeping and accounting.[1] VanDerbeek's practice grew dramatically in the early 1990s.

¶3 In 1995, 28 former clients sued the VanDerbeeks for charging excessive fees. VanDerbeek signed a declaration in June 1996 informing plaintiffs that she was "in the process" of changing her billing software to remedy client complaints about her billing practices. The case settled in 1996, but VanDerbeek did not change her billing software until May 2000.[2]

¶4 In response to grievances from these plaintiffs and other former clients, the WSBA instituted an investigation of VanDerbeek's billing practices. The WSBA consolidated these grievances and initiated the disciplinary action at issue here alleging, in relevant part, that in count I, VanDerbeek violated RPC 1.5(a), 8.4(b), and 8.4(c) by inflating clients' bills; in count IV, VanDerbeek violated RPC 1.5(a) and 8.4(c) by billing clients for fees and costs incurred in connection with her attempts to collect outstanding fees; in count V, VanDerbeek violated RPC 1.5(a), 8.4(c), and 8.4(d) by filing attorney liens on the proceeds of clients' real property sales and billing clients for fees and costs incurred in connection with filing such liens; in count VI, VanDerbeek violated RPC 1.4(b) and 1.5(b) when she refused to provide clients with itemized bills; in count VII, VanDerbeek violated RPC 8.4(c) when she intentionally misrepresented the capabilities of her billing software; in

---

[1] John VanDerbeek has a J.D. degree but never took the bar exam. He also has an undergraduate degree in finance and economics.

[2] The VanDerbeeks settled the case for $200,000. VanDerbeek also agreed to refrain from collecting $400,000 in outstanding legal fees allegedly owed by these clients.

count IX, VanDerbeek violated RPC 3.3(a)(1) by making a misrepresentation to the court about her intention to promptly change her billing practices; in count X, VanDerbeek violated RPC 5.3(a)-(c) and 8.4(a) by failing to properly supervise her employees and take action to rectify their billing misconduct; and, in count XI, VanDerbeek is unfit to practice law. *See* WSBA's Second Am. Formal Compl. at 4-22 (Aug. 23, 2002). Counts I, IV, and V are at issue here; neither party disputes the hearing officer's and Board's conclusions on counts VI, VII, IX, X, and XI.

## Count I

¶5 In count I, the WSBA alleged that VanDerbeek violated RPC 1.5(a), 8.4(b) (theft in the first degree in violation of RCW 9A.56.020), and 8.4(c) by charging 31 clients with "excessive and/or unreasonable fees by billing . . . for services that were not performed and/or inflating the amount of time that was spent on a service, and/or billing a client at attorney rates for legal assistant work and/or billing for overhead and secretarial work." R. at 11, Findings of Fact (FOF) 43. The hearing officer dismissed allegations of excessive billing by 17 of VanDerbeek's clients, but grievances filed by 14 clients remained.

¶6 After considering testimony from experts on both sides—VanDerbeek, clients, and clients' billing statements—the hearing officer sustained charges that VanDerbeek violated RPC 1.5(a) by intentionally charging excessive and unreasonable fees to 11 clients: Vicki Gould, Denise DeBoer, Michelle Drake (Forkner), Andria Kennoy, Sharyn Langston, Rita Gibbons, Janice Erdman, Rene Wiswall (Roberts), Diana Aumack, Angela Hirschbeel, and Charlene Daniels.[3] But the hearing officer also concluded

---

[3] In her findings, the hearing officer also found that VanDerbeek charged Angela Hirschbeel excessive and unreasonable fees when she charged $100 (.8 hours of attorney time) for a facsimile transmittal letter and notice of intent to withdraw. *See* R. at 17, FOF 78. However, in the conclusions of law pertaining to VanDerbeek's violations of RPC 1.5(a) in count I, the hearing officer failed to include Hirschbeel's name. *See id.* at 35, Conclusions of Law (CL) 6. The WSBA

that the WSBA had failed to prove that VanDerbeek charged June Roetemeyer, Dori Viltz, and Monti Darnall excessive fees. Lastly, she concluded that the WSBA failed to demonstrate by a clear preponderance of the evidence that VanDerbeek violated RPC 8.4(b) (theft in the first degree) or 8.4(c).

## Count IV

¶7 In count IV, the WSBA alleged that VanDerbeek violated RPC 1.5(a) and 8.4(c) when she billed Daniel Breard, Charlene Daniels, Denise DeBoer, Michelle Drake (Forkner), Denise Gaffney, Rita Gibbons, and Susan Morris for her attorney fees and costs incurred in her attempts to collect these clients' outstanding fees. VanDerbeek claimed that her fee agreement permitted her to recover these fees and costs.[4]

¶8 The hearing officer found that, absent a court action, the plain language of the fee agreement did not permit VanDerbeek to bill clients for fees and costs associated with her attempts to collect her outstanding legal fees from these clients. However, she found credible VanDerbeek's testimony that she believed she was entitled to bill for the time spent collecting her fees. She concluded that VanDerbeek did not attempt to defraud her clients in violation of RPC 8.4(c) and that "[t]here is not clear and convincing evidence that the amounts billed for collecting attorney fees were unreasonable" in violation of RPC 1.5(a).[5] R. at 19, FOF 93, 95.

---

notes that this appears to be a typographical error. We agree. Pursuant to our authority under the Rules for Enforcement of Lawyer Conduct (ELC) 2.1, we amend the hearing officer's conclusions of law to include Hirschbeel.

[4] The pertinent provision in her fee agreement states that " 'if legal action is necessary to collect any sum due and owing DIANE L. VANDERBEEK, the undersigned agrees to pay Court costs and reasonable attorney fees incurred in the processing of such action.' " R. at 18, FOF 90.

[5] We will treat conclusions of law mistakenly stated in the findings of fact as conclusions of law. *See Ridgeview Props. v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982).

## Count V

¶9 In count V, the WSBA alleged that VanDerbeek's practice of recording attorney liens on real property owned in whole or in part by clients Charlene Daniels, Susan Morris, and Dori Viltz violated this court's holding in *Ross v. Scannell*, 97 Wn.2d 598, 647 P.2d 1004 (1982), and thus violated RPC 1.5(a), 8.4(c), and 8.4(d). VanDerbeek admitted that she filed these liens but argued that the liens did not violate *Ross* since she filed them on the *proceeds* of her clients' real property sales.

¶10 The hearing officer found that VanDerbeek's testimony was not credible, "nor did Ms. VanDerbeek ever articulate the difference between filing on the real property and filing on the proceeds of the sale of real property when both filings appear as liens on a title report." R. at 20, FOF 102. She also found that VanDerbeek "intentionally ignored the statute and Supreme Court case law in deciding to file the liens," and that she "filed the liens in an attempt to coerce her clients into paying disputed fees." R. at 20, FOF 102, 104. Consequently, the hearing officer concluded that VanDerbeek's conduct was prejudicial to the administration of justice and violated RPC 1.5(a) and 8.4(d). The hearing officer, however, rejected the WSBA's claim that VanDerbeek violated RPC 8.4(c), reasoning that the WSBA failed to present any evidence that VanDerbeek "intentionally or knowingly misled clients about whether she was billing for filing liens." R. at 20, FOF 105.

## Count VI

¶11 In count VI, the WSBA alleged that VanDerbeek violated RPC 1.4 and 1.5(b) when she refused to provide clients with itemized bills. Additionally, the WSBA alleged that VanDerbeek failed to keep back-up documentation of her bills in order to properly respond to such requests.

¶12 Based on testimony from the WSBA's expert, the hearing officer found that VanDerbeek had failed to keep

proper back-up documentation but also found that "[t]here was no evidence of a conspiracy to destroy records nor did the evidence warrant an inference that the records were intentionally destroyed to conceal their contents." R. at 21, FOF 109, 110. Thus, she concluded that VanDerbeek failed to provide sufficient information in response to five clients' requests for itemization in violation of RPC 1.4.[6] However, the hearing officer rejected the WSBA's claim that VanDerbeek's failure to provide bills with adequate itemization violated RPC 1.5(b), reasoning that "it is not a violation of the RPC to provide bills lacking adequate itemization, the violation consists of the failure to have sufficient back-up documentation to provide details upon request." R. at 20, FOF 106.

## Count VII

¶13 In count VII, the WSBA alleged that VanDerbeek intentionally misrepresented the capabilities of her billing software to both the WSBA and her clients in violation of RPC 8.4(c) by telling them that her billing software could not provide itemization of fees and costs. VanDerbeek testified that she did not know her software could provide such information. The hearing officer noted that VanDerbeek's software indisputably could provide itemization but found VanDerbeek's testimony credible. The hearing officer concluded that the WSBA had "failed to meet its burden of showing dishonesty" under RPC 8.4(c). R. at 29, FOF 150.

## Count IX

¶14 In count IX, the WSBA alleged that VanDerbeek violated RPC 3.3(a)(1) when, in a June 11, 1996 declaration

---

[6] The hearing officer, however, refused to consider clients' grievances dated before November 1994 when WSBA disciplinary counsel first sent a letter to VanDerbeek informing her of her duty under the RPCs to provide clients with itemized billing upon their requests. *See* R. at 28, FOF 146. Five clients' grievances, Vicki Gould, Tim Ooyman, Mary Lingelbach, Nora Matthews, and Andria Kennoy, still remained. *Id.*

to superior court, she represented that she was "in the process" of changing her billing practices.[7] R. at 29, FOF 151. VanDerbeek failed to make any changes to her billing practices until March 2000, almost four years after making the 1996 declaration. The hearing officer rejected the WSBA's allegation, reasoning that "[t]he term 'in the process' is not a precise term and is capable of different interpretations. . . . The fact that the changes were not made for a substantial period of time does not mean that Ms. VanDerbeek was not 'in the process' of making changes at the time the declaration was filed." R. at 29, FOF 153.

## Count X

¶15 In count X, the WSBA alleged: (1) VanDerbeek violated RPC 8.4(a) when she assisted or induced John Van-Derbeek's conduct in violating the RPCs; (2) VanDerbeek violated RPC 5.3(a) and 5.3(b) when she failed to take reasonable measures to ensure that her firm did not violate the RPCs and/or failed to supervise a nonlawyer, John VanDerbeek, to ensure that his conduct did not violate the RPCs; and (3) VanDerbeek violated RPC 5.3(c) when she ordered or ratified unethical employee conduct and/or failed to take remedial action after learning of the unethical conduct.

¶16 First, the hearing officer found that John VanDerbeek habitually added charges to clients' bills without explanation. VanDerbeek testified that she discontinued John's practice of adding these additional charges to clients' bills when she first learned of it in 1998. However, the hearing officer found that VanDerbeek failed to super-

---

[7] In the section of the findings of fact devoted to count IX, the hearing officer stated that this count pertained to statements VanDerbeek made in a June 1999 declaration. However, in another section of the findings, the hearing officer noted that VanDerbeek made the declaration at issue in June 1996. *See* R. at 11, FOF 42. It is clear that this declaration was made in June 1996. If the hearing officer had cited to the correct date of the declaration in her findings of fact pertaining to count IX, it is arguably possible that she could have concluded that the WSBA had proved count IX. The WSBA, however, has not raised this argument here.

vise John even after learning that he was adding additional charges to clients' bills.

¶17 In addition, the hearing officer found that John violated the RPCs when he instituted a billing system,

> whereby legal assistant time was to be entered at half the amount of time actually spent on the task, using Ms. VanDerbeek's rate, to achieve a bill that would represent the correct dollar amount for the bills. It appears that legal assistant time was often, if not always, entered at the time actually billed and thus billed at Ms. VanDerbeek's own rate.

R. at 31, FOF 165. The hearing officer concluded that VanDerbeek did not know this practice occurred but found that "even minimal review of the bills or the billing process should have revealed it to be happening." *Id.*

¶18 Lastly, the hearing officer considered John's response to clients who called with questions and complaints about their bills. The hearing officer found that "Mr. VanDerbeek created an atmosphere with clients and staff where they were afraid to question the billing process in an attempt to reduce or minimize inquiries into the bills, which he knew he would not be able to support." R. at 31, FOF 166. Further, even when VanDerbeek learned of client complaints, she did nothing to change her billing system. The hearing officer characterized her refusal to learn more about her billing system and software as a "willful failure to become adequately informed about her office policies and procedures." R. at 32, FOF 168.

¶19 Because of VanDerbeek's failure to respond to client complaints, monitor John's billing practices, and her "willful failure" to learn more about her firm's billing system, the hearing officer concluded that the WSBA had proved that she violated RPC 5.3(a) and (b). However, she concluded that the WSBA failed to establish that VanDerbeek violated RPC 8.4(a).[8]

---

[8] Although the WSBA alleged in count X that VanDerbeek also violated RPC 5.3(c), neither the hearing officer nor the Board made any specific findings or conclusions pertaining to this violation. Given that the parties have not raised this

## Count XI

¶20 In count XI, the WSBA claimed that VanDerbeek was unfit to practice law, pointing to a prior 1987 disciplinary action and the counts alleged in this complaint. Based on the counts in this complaint, the hearing officer concluded that "[t]he enumerated violations above reflect adversely on Ms. VanDerbeek's fitness to practice law."[9] R. at 38, CL 30.

## Sanctions Imposed by the Hearing Officer

¶21 For VanDerbeek's violations of RPC 1.5(a) in count I, the hearing officer concluded that disbarment was the presumptive sanction because VanDerbeek knowingly sent excessive and unreasonable bills with the intent of personal gain, which caused serious emotional and economic injury to her clients. On count V, the hearing officer determined that VanDerbeek's conduct of filing attorney liens on the proceeds of her clients' real property warranted an admonishment. She also concluded that a reprimand was the presumptive sanction for counts VI and X.

¶22 In determining the appropriate sanction, the hearing officer found five aggravating factors: (1) a prior 1987 disciplinary action involving dishonesty; (2) a pattern of billing misconduct as well as a dishonest or selfish motive for financial gain and self-interest; (3) failure to acknowledge the wrongful nature of her conduct; (4) the vulnerability of VanDerbeek's clients; and (5) substantial experience in the practice of law. The hearing officer also found four mitigating factors: (1) VanDerbeek's "good" reputation as a lawyer; (2) the remoteness of her prior 1987 offense; (3)

issue here, we presume that the hearing officer concluded that the WSBA had also failed to establish that VanDerbeek violated RPC 5.3(c).

[9] The hearing officer recognized that VanDerbeek had received a reprimand in 1987 when she misrepresented that she bought a fishing license to avoid receiving a citation and then requested that the clerk backdate the license so that it appeared she had a license while she was fishing. *See* R. at 32, FOF 172. The hearing officer appears to have given little weight to this reprimand.

VanDerbeek suffered other penalties or sanctions, namely the 1995 civil case brought by her former clients; and (4) the WSBA significantly delayed the disciplinary proceedings.[10] R. at 40, Mitigating Factors 17-20.

¶23 After considering the aggravating and mitigating factors, the hearing officer recommended a two-year suspension and 15 CLE (continuing legal education) hours of law office management.[11] She principally based this decision on the mitigating factor of delay and the fact that many of VanDerbeek's billing violations were a result of her husband's billing practices.

## The Board's Decision

¶24 The Board adopted the hearing officer's findings of fact and conclusions of law and recommended sanction with several amendments. On count I, the Board found that the WSBA had proved dishonesty and amended the hearing officer's conclusions of law to specifically include a violation of RPC 8.4(c).[12] The Board also reinstated count IV, reasoning that "the record established a violation of Count 4 and that Ms. VanDerbeek's subjective belief about her fee agreement was not reasonable or relevant." Decision Papers (DP) at 3. However, on count XI, the Board reversed the hearing officer's conclusion that VanDerbeek was unfit to practice law. *Id.* at 4.

[10] The hearing officer did not separately set forth aggravating and mitigating factors for each count in the WSBA's complaint that she found VanDerbeek had violated.

[11] The sanctions the hearing officer imposed on counts V, VI, and X appear to be subsumed in the two-year suspension for VanDerbeek's violations of count I.

[12] The Board amended the hearing officer's CL 6 to state:

"Respondent intentionally charged excessive or unreasonable fees in excess of the time spent on services in violation of RPC 1.5(a) and RPC 8.4(c) to the following clients: Vicki Gould Cunning, Denise DeBoer, Michelle Drake (Forkner), Andria Kennoy, Sharyn Langston, Rita Gibbons, Janice Erdman, Rene Wiswall (Roberts), Diana Aumack, and Charlene Daniels. This subjects Respondent to discipline under RLC 1.1(I)." Decision Papers (DP) at 3-4.

As noted *supra* note 3, we here amend the hearing officer's conclusions of law on count I to additionally include Angela Hirschbeel since the hearing officer found that VanDerbeek had charged Hirschbeel excessive and unreasonable fees.

¶25 The Board agreed that VanDerbeek's presumptive sanction was disbarment. Nine members of the Board found that mitigating factors, namely VanDerbeek's reliance on her husband to handle billing matters and the fact that VanDerbeek generally performed competent work for her clients, justified a two-year suspension. Four members dissented, arguing that VanDerbeek's misconduct should result in disbarment. Pursuant to ELC 13.9, the WSBA requested and the Board chair awarded $48,636.07 for costs and expenses incurred by the WSBA for VanDerbeek's disciplinary proceeding.

¶26 VanDerbeek appealed the Board's decision to this court. She argues that: (1) insufficient evidence exists to support the hearing officer's findings on count I that she charged six clients excessive and unreasonable fees; (2) the Board erred when it reinstated count IV of the WSBA's complaint; (3) the hearing officer and the Board erred by concluding that filing attorney liens on the proceeds of clients' real property sales constitutes a violation of RPC 1.5(a); (4) the hearing officer and Board wrongfully determined that disbarment was the presumptive sanction on count I and failed to properly weigh the aggravating and mitigating factors; and (5) the Board chair imposed excessive costs.

II

ANALYSIS

¶27 This court exercises plenary authority in attorney discipline matters. *In re Disciplinary Proceeding Against Brothers*, 149 Wn.2d 575, 582, 70 P.3d 940 (2003) (citing *In re Disciplinary Proceeding Against Carmick*, 146 Wn.2d 582, 593, 48 P.3d 311 (2002)). Even so, we give considerable weight to the hearing officer's findings of fact, especially with regard to the credibility and veracity of witnesses, and we will uphold the findings of fact if they are supported by a clear preponderance of the evidence. *In re Disciplinary Proceeding Against Kagele*, 149 Wn.2d 793,

813, 72 P.3d 1067 (2003). We will uphold the hearing officer's conclusions of law if they are supported by the findings of fact. *In re Disciplinary Proceeding Against Huddleston*, 137 Wn.2d 560, 568-69, 974 P.2d 325 (1999). However, we review conclusions of law de novo. *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 717, 72 P.3d 173 (2003).

## Count I

¶28 VanDerbeek argues that insufficient evidence exists to support the hearing officer's findings that she charged Erdman, Gibbons, Wiswall, Aumack, and Gould excessive and unreasonable fees in violation of RPC 1.5(a).[13] Relying on our opinion in *Kagele*, she claims the hearing officer made these findings based on her "personal opinion of factual matters unsupported by the record." VanDerbeek's Br. at 25. On the other hand, the WSBA argues that substantial evidence exists to permit the hearing officer to reasonably infer that VanDerbeek charged these five clients excessive and unreasonable fees.[14]

¶29 We agree with the WSBA. In *Kagele*, the hearing officer found that Kagele had performed a specific percentage of work for nine clients. 149 Wn.2d at 813. On appeal, Kagele argued that the hearing officer relied on his own personal opinion to reach the findings that he had per-

---

[13] VanDerbeek has not challenged the findings of fact and conclusions of law where the hearing officer based her findings, in part, on expert testimony that VanDerbeek had charged clients excessive and unreasonable fees. R. at 11-13, FOF 66, 71, 75, 80. Accordingly, these findings are accepted as verities on appeal. *Carmick*, 146 Wn.2d at 594 (citing *In re Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 759, 801 P.2d 962 (1990)).

[14] The WSBA also contends that pursuant to RAP 10.3(g), VanDerbeek must make separate assignments of error for each finding of fact she disputes in count I. RAP 10.3(g), however, provides that an "appellate court will only review a claimed error which is included in an assignment of error *or clearly disclosed in the associated issue pertaining thereto*." (Emphasis added.) Although VanDerbeek failed to make separate assignments of error, she did disclose which findings she disputed in her discussion of the associated issue. Thus, while separate assignments of error to each disputed finding would have been ideal, we conclude that VanDerbeek has sufficiently complied with RAP 10.3(g).

formed only a certain percentage of work for his clients. *Id.* We agreed, reasoning that:

> The record is silent on the method used by the hearing officer to calculate these percentages and contains no time analysis of Kagele's work for each client. The evidence does not establish what specific services Kagele agreed to render and lacks any assessment of the reasonable value of the services he did provide.

*Id.*

¶30 Here, however, the hearing officer drew reasonable inferences from documents and testimony about the services VanDerbeek rendered to reach her findings. *See In re Disciplinary Proceeding Against Cohen*, 149 Wn.2d 323, 333, 67 P.3d 1086 (2003) (holding that it was appropriate for the hearing officer to draw reasonable inferences from the testimony and sequence of events presented at the disciplinary hearing). In Gould's case, the hearing officer heard testimony from Kirk Griffin who had served as opposing counsel. Griffin testified that his records "reflected far fewer calls" to VanDerbeek's office than were billed to Gould as conversations with opposing counsel. R. at 17, FOF 79; Trial Record (TR) at 128-36. The WSBA also presented an exhibit demonstrating that on December 23, 1999, VanDerbeek billed Gould for seven alleged conference calls with Griffin. *See* Ex. F-15, at 50-58; *see also* R. at 17, FOF 79. He did not bill his client for any calls. Ex. F-15, at 69-71. Based on this exhibit as well as Griffin's testimony, the hearing officer properly found that VanDerbeek charged Gould excessive and unreasonable fees.

¶31 Similarly, in Aumack's case, the hearing officer examined documents and heard testimony which showed that VanDerbeek charged Aumack $350 for a simple 1.5 page letter notifying opposing counsel of her withdrawal and for preparation of a notice of withdrawal. *See* Ex. A-18, at 7-9; TR at 1146-49. From this, the hearing officer properly found that VanDerbeek charged Aumack excessive and unreasonable fees since the notice of withdrawal was a simple form, and the letter to opposing counsel could not have reason-

ably required more than two hours of attorney time to prepare.

¶32 In Erdman's case, the hearing officer considered testimony from VanDerbeek as well as documents describing the services she allegedly rendered. Ex. A-18, at 18-25; TR at 1094-95. At issue were VanDerbeek's $70 and $126 fees for drafting a two sentence facsimile transmittal letter to opposing counsel and for preparation and filing of a notice of intent to withdraw. VanDerbeek testified that a paralegal might take .2 to .3 hours to prepare a notice of withdrawal and .1 to .2 hours to review the file for information. *See* TR at 1094-95. VanDerbeek, however, charged Erdman 1 hour of legal assistant time to draft the two sentence transmittal letter and 1.8 hours of legal assistant time for the preparation and filing of her notice of intent to withdraw. *See* R. at 12, FOF 73. VanDerbeek's testimony coupled with Erdman's billing statements provides a substantial basis for the hearing officer to find that VanDerbeek charged Erdman excessive and unreasonable fees.

¶33 The WSBA also produced evidence showing that VanDerbeek charged Wiswall $336 for preparation of a summons and complaint in her action against Wiswall to collect outstanding legal fees. *See* Ex. A-18, at 48-52; TR at 1171-72. The hearing officer examined the summons and complaint and found that it was a "form pleading" which VanDerbeek routinely used in her collection actions. R. at 16, FOF 76. Again, we can conclude that the hearing officer reasonably found that $336 (2.4 hours of attorney time) for this form pleading was an excessive and unreasonable fee.[15]

¶34 Lastly, in Gibbons' case, the WSBA produced evidence demonstrating that VanDerbeek charged $100 (.8 hours of attorney time) to draft a two paragraph letter requesting that Gibbons contact her; VanDerbeek charged

---

[15] We do not hold here that a lawyer may not charge a flat fee per document or product prepared so long as the client agrees to the per document fee and that the charged fee is reasonable under all the circumstances. VanDerbeek and her clients *did not* agree to flat fees for preparation of certain documents or product.

$100 (.8 hours of attorney time) to draft a one page letter to Gibbons requesting that she pay her outstanding legal fees; and VanDerbeek charged $225 (1.8 hours of attorney time) to prepare a notice of withdrawal and to draft a letter responding to Gibbons' complaint that VanDerbeek had failed to adequately represent her. *See* Ex. A-18, at 26-30, 35-38; TR at 1158-62, 1165-69; R. at 16, FOF 74. Given that the letters were mere requests for contact and/or payments for fees and that the notice of intent to withdraw was a simple form, the hearing officer properly found that VanDerbeek charged Gibbons excessive and unreasonable fees.[16]

## Count IV

¶35 VanDerbeek also argues that the Board improperly reinstated count IV of the WSBA's complaint, which alleged that VanDerbeek violated RPC 1.5(a) and 8.4(c) when she billed Breard, Daniels, DeBoer, Forkner, Gaffney, Gibbons, and Morris for attorney fees and costs incurred in connection with her attempts to collect their outstanding legal fees. The WSBA concedes that the evidence does not support a violation of RPC 8.4(c) but asserts that we should affirm the Board's conclusion that VanDerbeek violated RPC 1.5(a).[17]

¶36 To assess the reasonableness of VanDerbeek's fees, we turn to the relevant factor, RPC 1.5(a)(8). *See In re Disciplinary Proceeding Against Boelter*, 139 Wn.2d 81, 96,

---

[16] We also note that the record supports the hearing officer's finding that VanDerbeek charged Hirschbeel excessive and unreasonable fees. *See supra* note 3. In Hirschbeel's case, the WSBA had offered evidence proving that VanDerbeek charged Hirschbeel $100 for a simple facsimile transmittal letter and a form notice of intent to withdraw. *See* Ex. A-18, at 40-42. The hearing officer soundly reasoned that "[t]he work could not have taken .8 hour to prepare, and a secretary could have done the work." R. at 17, FOF 78.

[17] The WSBA noted in its brief that the Board appears to have reinstated only the portion of count IV pertaining to VanDerbeek's alleged violations of RPC 1.5(a) since the WSBA had confined its appeal of the hearing officer's decision on count IV to this issue.

985 P.2d 328 (1999).[18] RPC 1.5(a)(8) requires this court to consider "[w]hether the fee agreement or confirming writing demonstrates that the *client had received a reasonable and fair disclosure of material elements* of the fee agreement and of the lawyer's billing practices." (Emphasis added.)

■■ ¶37 The pertinent provision of VanDerbeek's fee agreement provides that " 'if legal action is necessary to collect any sum due and owing DIANE L. VANDERBEEK, the undersigned agrees to pay Court costs and reasonable attorney fees incurred in the processing of such action.' " R. at 18, FOF 90. VanDerbeek contends that her practice of billing clients for fees and costs incurred in connection with her attempts to collect outstanding legal fees was reasonable under *her* interpretation of the fee agreement. The Board rejected this argument, reasoning that VanDerbeek's subjective belief about the nature of her fee agreement was irrelevant and that under the plain language of her fee agreement, billing for such fees and costs was unreasonable. *See* DP at 3.

¶38 We agree with the Board. The language of VanDerbeek's fee agreement does not provide "reasonable and fair disclosure" to *clients* about her practice of charging them for fees and costs incurred in connection with her attempts to collect their outstanding legal fees in the *absence of a legal action*. RPC 1.5(a)(8). Indeed, the word "action," used in VanDerbeek's agreement, is commonly understood in "its usual legal sense" as "a suit brought in a court." BLACK'S LAW DICTIONARY 26 (5th ed. 1979). Accordingly, the Board properly reinstated violations of RPC 1.5(a) in count IV.

¶39 VanDerbeek also claims that she is being punished twice for the same conduct because findings in count IV duplicate findings in count I. On count I, the hearing officer

---

[18] In *Boelter*, we noted that RPC 1.5(a)(8) is "[t]he relevant factor in a determination of reasonableness" in instances where an attorney has charged clients' fees that were alleged to be outside of those agreed upon by the parties in their fee agreement. 139 Wn.2d at 96.

based her conclusion, in part, that VanDerbeek violated RPC 1.5(a) when she inflated Daniels', DeBoer's, Forkner's, and Gibbons' bills. *See* R. at 35, Conclusion of Law (CL) 6. On count IV, however, the Board concluded that VanDerbeek violated RPC 1.5(a) because the fees she charged *Breard*, Daniels, DeBoer, Forkner, *Gaffney*, Gibbons, and *Morris* in connection with her efforts to collect her outstanding legal fees and costs were unreasonable under the terms of her fee agreement. *See* DP at 3; R. at 18, FOF 88. Because count I did not address fees VanDerbeek charged to Breard, Gaffney, and Morris, we affirm the Board's conclusion that VanDerbeek violated RPC 1.5(a) when she charged unreasonable fees that were not reasonably and fairly disclosed in these three clients' fee agreements.

## Count V

¶40 VanDerbeek asserts that the hearing officer and the Board improperly concluded that she violated RPC 1.5(a) and 8.4(d) by placing attorney liens on the proceeds of clients Daniels', Morris', and Viltz's real property sales and charging these clients for fees and costs incurred in connection with placing these liens. The WSBA, however, argues that VanDerbeek violated RPC 1.5(a) and 8.4(d) since her fee agreement failed to disclose her practice of billing clients for fees and costs incurred in connection with filing these liens, and that VanDerbeek filed the liens in violation of this court's holding in *Ross*, 97 Wn.2d at 606-07. We agree with the WSBA.

¶41 The pertinent provision in VanDerbeek's fee agreement states "[i]t is further agreed that if legal action is necessary to collect any sum due and owing DIANE L. VANDERBEEK, the undersigned agrees to pay Court costs and reasonable attorney fees incurred in the processing of such action." Ex. A-7, at 1, 24, 34. As noted, this provision of the fee agreement permits VanDerbeek to charge clients for fees and costs incurred from a *legal action* to collect their outstanding legal fees. Consequently, VanDerbeek's fee

agreement fails to provide clients "reasonable and fair disclosure" of her practice to bill clients for fees incurred in connection with filing attorney liens on the proceeds of their real property sales. RPC 1.5(a)(8). Therefore, we hold that the hearing officer and Board properly concluded that VanDerbeek violated RPC 1.5(a) by billing clients for these fees and costs.[19]

¶42 VanDerbeek also argues that the hearing officer and Board improperly concluded that she violated RPC 8.4(d) by filing these attorney liens. RPC 8.4(d) provides that "[i]t is professional misconduct for a lawyer to: . . . [e]ngage in conduct that is prejudicial to the administration of justice." In *In re Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 764, 801 P.2d 962 (1990), we considered whether an attorney's conviction for vehicular homicide constituted misconduct that was "prejudicial to the administration of justice" under RPC 8.4(d). We noted that "[d]ecisions in this jurisdiction show that conduct deemed prejudicial to the administration of justice has generally been conduct of an attorney in his official or advocatory role or conduct which might physically interfere with enforcing the law." 115 Wn.2d at 764. We also established that "[RPC 8.4(d)] only extends to violations of practice norms and physical interference with the administration of justice." *Id.* at 766. In Curran's case, we reasoned that he was not acting in his capacity as a lawyer nor attempting to physically interfere with law enforcement when he committed vehicular homicide, and thus declined to hold that he violated RPC 8.4(d). *Id.*

¶43 Like the attorney in *Curran*, VanDerbeek claims that "[s]he was acting in her personal capacity of seeking to collect a debt." VanDerbeek's Br. at 32. We find this argument unpersuasive. When she seeks to collect debt

---

[19] VanDerbeek also appears to argue that the hearing officer and the Board improperly found that she had violated RPC 1.5(a) by concluding that any fees she charged clients for placing attorney liens on the proceeds of their real property sales were per se unreasonable. However, since we hold that her fee agreement failed to reasonably and fairly disclose to clients her practice of charging for such fees and costs in violation of RPC 1.5(a), we need not consider this argument.

owed by clients, VanDerbeek acts in her official capacity as an attorney. Indeed, any authority that VanDerbeek has to file attorney liens under RCW 60.40.010 results from her attorney-client relationships.

¶44 Further, in *Ross*, we clearly established that attorneys may not file liens on real property under RCW 60.40.010. 97 Wn.2d at 606-07. Although *Ross* addressed attorney liens filed on the title of real property, we stated that attorney liens "clouding title" are prohibited under RCW 60.40.010. *Id.* at 607. We see no difference between attorney liens filed on the title of real property and those filed on the proceeds of real property sales since both filings appear as liens on a title report and thus have the effect of clouding clients' titles.[20] Accordingly, we hold that by filing these liens, VanDerbeek disregarded our decision in *Ross*, 97 Wn.2d at 606-07; such disregard constitutes a violation of practice norms "prejudicial to the administration of justice" under RPC 8.4(d). *See Curran*, 115 Wn.2d at 766.

---

[20] VanDerbeek contends that the law was unclear as to whether she could file liens on the proceeds of Daniels' and Morris' real property sales until the Court of Appeals explicitly stated in *Robinson v. Khan*, 89 Wn. App. 418, 423, 948 P.2d 1347 (1998), that liens filed on proceeds of real property sales act as a cloud upon title. Again, we find her argument unpersuasive. As the hearing officer noted, "Ms. VanDerbeek [could not] articulate the difference between filing on the real property and filing on the proceeds of the sale of real property when both filings appear as liens on a title report." R. at 20, FOF 102. Moreover, the hearing officer found that VanDerbeek "intentionally ignored the statute and Supreme Court case law in deciding to file the liens." *Id.* Consequently, we reject VanDerbeek's claim that she believed she could lawfully file liens on the proceeds of the sale of Daniels' and Morris' real property.

VanDerbeek also claims that she filed the attorney lien on the proceeds of the sales of Viltz's property "because the court directed that the payments of the attorney fees were to come from the proceeds of the sale of the real property." VanDerbeek's Br. at 35. VanDerbeek appears to argue that this is equivalent to a judgment under RCW 60.40.010(4). However, RCW 60.40.010(4) permits liens after a court has entered a judgment against a client. In Viltz's case, the court was merely directing the method of fee payment for the parties at dissolution. VanDerbeek had not yet sought a judgment against Viltz. Thus, RCW 60.40.010(4) does not apply.

## Sanction

¶45 VanDerbeek appeals the Board's decision to affirm the hearing officer's recommendation to impose a two-year suspension for her violations of the RPCs, arguing that both the hearing officer and the Board erred by determining that disbarment is the presumptive sanction and by failing to properly weigh the aggravating and mitigating factors.[21] VanDerbeek asserts that she should receive a reprimand. Cross-appealing, the WSBA contends that the hearing officer and the Board improperly considered the mitigating factors and that VanDerbeek should be disbarred.

¶46 In Washington, the American Bar Association's *Standards for Imposing Lawyer Sanctions*[22] (*Standards*) govern lawyer sanctions. *In re Disciplinary Proceeding Against Halverson*, 140 Wn.2d 475, 492, 998 P.2d 833 (2000). To determine whether the hearing officer and the Board properly determined VanDerbeek's presumptive sanction, we consider the ethical duties that she violated, her mental state, and the injury to her clients. *Id. See also In re Disciplinary Proceeding Against Cohen*, 150 Wn.2d 744, 758, 82 P.3d 224 (2004); STANDARDS std. 3.0(a)-(c). Next, we determine whether the hearing officer and the Board properly weighed the aggravating and mitigating factors. *Halverson*, 140 Wn.2d at 493. After we determine VanDerbeek's appropriate sanction, we consider whether the revised *Noble*[23] factors of unanimity and proportionality should alter her sanction. *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 259, 66 P.3d 1057 (2003).

¶47 We give significant weight to the Board's recommended sanction since the Board is " 'the only body to hear the full range of disciplinary matters' " and has a " 'unique experience and perspective in the administration

---

[21] VanDerbeek limits her argument to the hearing officer's and the Board's determination of the sanction on count I, the most serious charge.

[22] (1991 & Supp. 1992).

[23] *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 667 P.2d 608 (1983).

of sanctions.' " *In re Disciplinary Proceeding Against Dann*, 136 Wn.2d 67, 84, 960 P.2d 416 (1998) (quoting *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 94, 667 P.2d 608 (1983)). However, we may ultimately reject the Board's recommendation. *In re Disciplinary Proceeding Against Haskell*, 136 Wn.2d 300, 317, 962 P.2d 813 (1998).

## The Presumptive Sanction

¶48 VanDerbeek argues that the hearing officer and the Board improperly determined that disbarment serves as the presumptive sanction on count I. She asserts that she did not act knowingly when she sent her clients inflated bills.[24] We do not agree.

¶49 The findings here support the hearing officer's conclusion that VanDerbeek at least acted knowingly when she sent clients inflated bills with the intent of personal gain.[25] *See* R. at 35, Presumptive Sanction 2. The hearing officer found that VanDerbeek had engaged in a "pattern of *intentionally* inflating time and overbilling clients."[26] R. at 18, FOF 87 (emphasis added). This was amply illustrated by VanDerbeek's consistent practice of billing excessive fees for simple form pleadings, notices of intent to withdraw, and short letters requesting payment of fees. Indeed, VanDerbeek herself testified that these tasks did not equal the amounts she charged to clients. Moreover, VanDerbeek charged these excessive fees even though clients routinely questioned her billing practices, made re-

[24] VanDerbeek does not dispute the hearing officer's findings that she acted with the intent of personal gain and that her clients suffered serious financial and emotional injuries from her billing practices. Consequently, these findings are accepted as verities on appeal. *See In re Disciplinary Proceeding Against Johnson*, 118 Wn.2d 693, 701, 826 P.2d 186 (1992).

[25] The *Standards* define "[k]nowledge" as the "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." STANDARDS at 17.

[26] Although VanDerbeek disputes findings of fact for misconduct in five clients' cases in count I, she did not assign separate error to the hearing officer's finding that she engaged in a "pattern of intentionally inflating time and overbilling clients." R. at 18, FOF 87. Accordingly, this finding is accepted as a verity on appeal. *See Johnson*, 118 Wn.2d at 701.

quests for itemization, and initiated a lawsuit alleging that VanDerbeek had inflated their bills. Because VanDerbeek acted "knowingly" with the intent of personal gain and caused serious financial and emotional injuries to her clients, we hold that the hearing officer properly concluded that disbarment constitutes the presumptive sanction under *Standards* std. 4.6.[27]

## Aggravating and Mitigating Factors

¶50 Next we consider the aggravating and mitigating factors. The hearing officer evaluated the aggravating and mitigating factors pursuant to *Standards* stds. 9.22 and 9.32. She found five aggravating factors: (1) a prior 1987 disciplinary offense involving dishonesty, (2) a pattern of billing misconduct as well as a dishonest or selfish motive for financial gain and self-interest, (3) failure to acknowledge the wrongful nature of her conduct, (4) the vulnerability of VanDerbeek's clients, and (5) substantial experience in the practice of law. But she found four mitigating factors: (1) VanDerbeek's "good" reputation as a lawyer, (2) the remoteness of her prior 1987 offense, (3) other penalties or sanctions, and (4) delay. R. at 40, Mitigating Factors 17-20. Based on these factors *plus* the factor that "many of the billing problems appear to have resulted from reliance on John VanDerbeek to handle billing matters," the hearing officer concluded that a two-year suspension was appropriate. R. at 41, Recommended Sanction 22. The Board adopted the hearing officer's analysis of the aggravating and mitigating factors as well as the recommended sanction. DP at 4-5. In addition, the Board emphasized that it reached its decision, in part, because "it is undisputed that Ms. VanDerbeek worked hard and provided competent representation to her clients." *Id.* at 5.

---

[27] *Standards* std. 4.61 provides that "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury to a client."

Aggravating Factors

¶51 VanDerbeek disputes all of the aggravating factors. First, she argues that the hearing officer should not have considered her 1987 disciplinary offense since "it involved unrelated, personal behavior and was remote in time." VanDerbeek's Br. at 37. This court, however, routinely considers similar misconduct dating back many years to determine whether prior disciplinary offenses serve as an aggravating factor. *See In re Disciplinary Proceeding Against Juarez*, 143 Wn.2d 840, 880, 24 P.3d 1040 (2001) (considering a nine-year-old admonition for similar misconduct as an aggravating factor); *Cohen* 150 Wn.2d at 761 (considering 30- and 10-year-old admonitions and reprimands for similar misconduct as an aggravating factor). Because VanDerbeek's 1987 reprimand and the charges alleged in count I of this action both pertain to violations of RPC 8.4(c), the hearing officer properly concluded that VanDerbeek's prior offense is similar to the matter at hand and, therefore, serves as an aggravating factor.

¶52 Next, VanDerbeek argues that a pattern of misconduct does not exist. We find our decision in *Brothers*, 149 Wn.2d at 586, to be instructive. There we established that a pattern of misconduct constitutes an aggravating factor when "multiple violations occurred, involving multiple clients, over an extended period of time." *Brothers*, 149 Wn.2d at 586 (citing *Juarez*, 143 Wn.2d at 879; *In re Disciplinary Proceeding Against Anschell*, 141 Wn.2d 593, 615, 9 P.3d 193 (2000); *Halverson*, 140 Wn.2d at 499). In Brothers' case, we held that only two violations of RPC 1.5 did not establish a pattern of misconduct. *Id.* Here, however, VanDerbeek's misconduct involves charging 11 clients excessive and unreasonable fees in violation of RPC 1.5(a) and 8.4(c) over an extended period of time. Consequently, the evidence supports the hearing officer's conclusion that a pattern of misconduct exists.

¶53 VanDerbeek also contends that she did not act with a dishonest or selfish motive. However, VanDerbeek

has not offered any arguments or pointed to any evidence which would suggest that the hearing officer erred when, on count I, she found that VanDerbeek's violations were "done intentionally for the purpose of financial benefit of Respondent at the expense of her clients."[28] R. at 18, FOF 87; *see also* DP at 3 ("Disciplinary Counsel proved dishonesty"). Accordingly, we affirm the hearing officer's conclusion that VanDerbeek's dishonest or selfish motive serves as an aggravating factor.

¶54 Relying on our opinion in *In re Disciplinary Proceeding Against Anschell*, 149 Wn.2d 484, 514, 69 P.3d 844 (2003) (*Anschell* II), VanDerbeek disputes the hearing officer's conclusion that her victims were vulnerable. In *Anschell* II, we stated that the record must show that an attorney's victims were "under [a] physical or mental disability or [were] otherwise particularly vulnerable." *Id.* at 514. Here, VanDerbeek testified that DeBoer was "seriously mentally ill," Forkner had "psychological issues," Hirschbeel displayed "wildly emotional" behavior and sought therapy, Langston had experienced sexual abuse and domestic violence and suffered "very very serious psychological problems," Aumack's husband was abusive, and Gould's dissolution involved child custody issues and her husband was physically abusive. TR at 2113, 2134-37, 2141-44, 2147-49, 2154. Clearly, ample evidence exists to support the hearing officer's conclusion that VanDerbeek's victims were vulnerable. *See Halverson*, 140 Wn.2d at 496 (affirming the Board's conclusion that client going through a difficult dissolution and child custody proceeding was a vulnerable victim).

¶55 Lastly, VanDerbeek challenges the hearing officer's conclusion that she has substantial experience in the law, arguing that "[s]he did have substantial experience in the practice of family law but she did not have experience in

---

[28] VanDerbeek also appears to argue that the Board improperly reinstated violations of RPC 8.4(c) in count I. However, she has failed to assign separate error to the Board's conclusion that she violated RPC 8.4(c) or offer any arguments to support this claim.

the crucial aspect of the practice of law at issue here—the area of billing matters." VanDerbeek's Br. at 39. This argument is not persuasive. VanDerbeek entered the practice of law in 1981 and opened her solo practice in 1984. Her misconduct in this matter occurred in 1992-2000. Thus, VanDerbeek had almost 10 years of law office management experience prior to the first instance of misconduct alleged in this proceeding.

## Mitigating Factors

¶56 The WSBA challenges all of the mitigating factors. First, relying on our decisions in *Juarez*, 143 Wn.2d at 880 and *Cohen*, 149 Wn.2d at 340, the WSBA asserts that VanDerbeek's 1987 reprimand for violations of RPC 8.4(c) and 8.4(d) is not remote because it "was imposed for misconduct similar to the present case." WSBA's Br. at 43. In both *Juarez* and *Cohen*, we considered prior admonitions/reprimands for similar misconduct dating back 9 and 30 years as aggravating factors in the attorneys' current disciplinary proceedings. Further, in *Cohen*, we expressly declined to find that the remoteness of Cohen's prior similar disciplinary offenses served as a mitigating factor. 149 Wn.2d at 340. Like the prior offenses at issue in *Juarez* and *Cohen*, VanDerbeek's prior 1987 offense involved similar misconduct, i.e., violation of RPC 8.4(c). Accordingly, we hold that the remoteness of VanDerbeek's 1987 offense does not act as a mitigating factor.

¶57 Next, citing to *Standards* std. 9.4(a), the WSBA argues that VanDerbeek's civil settlement should not serve as a mitigating factor. *Standards* std. 9.4(a) provides that "forced or compelled restitution" "should not be considered as either aggravating or mitigating." In *Standards* std. 9.4(a) (Commentary), the ABA clarifies that such action should not be considered mitigating when lawyers "make restitution only *after* a disciplinary proceeding has been instituted against them." (Emphasis added.) Here, because VanDerbeek entered a settlement with her

clients *prior* to her disciplinary proceeding in this matter, *Standards* std. 9.4(a) does not apply.

 ¶58 We must still determine whether settlement in a civil suit serves as a mitigating factor. We have held that criminal penalties properly serve as a mitigating factor. *See In re Disciplinary Proceeding Against Immelt*, 119 Wn.2d 369, 372, 831 P.2d 736 (1992); *In re Disciplinary Proceeding Against Petersen*, 120 Wn.2d 833, 856, 846 P.2d 1330 (1993). Yet a civil settlement is substantially diffferent from the criminal penalties we have previously acknowledged as mitigating factors. Presumably, VanDerbeek settled the suit to avoid the expenses of trial and to provide some restitution to her clients. Indeed, in some instances, a "timely good faith effort to make restitution or to rectify consequences of misconduct" may serve as a mitigating factor. STANDARDS std. 9.32(d). However, the purpose of recognizing such action as a mitigating factor, in part, is to "ensure that the lawyer has recognized the wrongfulness of his conduct." *Id.* cmt. VanDerbeek, however, continued to commit misconduct after she and the plaintiffs reached this settlement. Thus, under the facts of this case, we hold that VanDerbeek's 1996 settlement does not act as a mitigating factor.[29]

 ¶59 The WSBA also contends that the hearing officer found that the delay in VanDerbeek's proceedings occurred in connection with other counts in its complaint. The hearing officer, however, did not confine her findings of delay to VanDerbeek's violations of RPC 1.4 and 5.3.[30] *See* R. at 33, FOF 178, 179. Therefore, we hold that the hearing officer properly considered the mitigating factor of delay.

[29] The WSBA also argues that the hearing officer improperly found that the length of this disciplinary proceeding serves as another penalty or sanction. The WSBA is correct; the length of the current disciplinary proceeding is more properly considered as part of the mitigating factor of delay.

[30] For example, the hearing officer stated, "[t]here was a substantial delay in prosecuting the majority of the grievances against Ms. VanDerbeek. Most of the grievances are from the 1992-1995 time frame, 6-9 years before the hearing." R. at 33, FOF 178. The hearing officer also explicitly found delay in prosecution of the Kennoy and Langston matters, which form, in part, the basis for count I. *Id.*, FOF 179.

¶60 Next, the WSBA asserts that the hearing officer and the Board erred by considering John VanDerbeek's role as a mitigating factor for count I. We agree. On count I, the hearing officer never found that *John VanDerbeek* altered the billing data at issue. To the contrary, she found that on count I, VanDerbeek herself had engaged in a "pattern of intentionally inflating time and overbilling clients." R. at 18, FOF 87. Thus, we decline to consider John's role as a mitigating factor for the sanction imposed for count I.

¶61 Lastly, the WSBA argues that the Board improperly considered VanDerbeek's competence as a mitigating factor, contending that it will lead to extensive litigation in future disciplinary proceedings. Although the WSBA's concern may be valid, the Board's characterization of VanDerbeek's "competent representation" appears to be in reference to VanDerbeek's good reputation as a lawyer. *See* DP at 5. *Standards* std. 9.32(g) expressly provides that an attorney's reputation may serve as a mitigating factor.

## The Recommended Sanction

¶62 We now consider the Board's recommended sanction. We have held that "[t]he Board should deviate from the presumptive sanction only if the aggravating and mitigating factors are sufficiently compelling to justifying a departure." *Cohen*, 149 Wn.2d at 339. As noted, after weighing the aggravating and mitigating factors, both the hearing officer and Board determined that VanDerbeek's misconduct warranted a two-year suspension instead of the presumptive sanction of disbarment. *See* DP at 4-5. Because we have held that the hearing officer and the Board improperly considered the mitigating factors of the remoteness of VanDerbeek's prior disciplinary offense, other penalties or sanctions, and John VanDerbeek's role, the hearing officer's and Board's reasons for departing from the presumptive sanction become less convincing. Only two mitigating factors remain, delay in the disciplinary proceedings and VanDerbeek's good reputation. In *Immelt*, we

ordered disbarment when only one mitigating factor was present. 119 Wn.2d at 372-73. Similarly, in *Peterson* we found that the attorney failed to offer any "extraordinary" mitigating factors to warrant departure from the presumptive sanction of disbarment. 120 Wn.2d at 856. Thus, given that the aggravating factors outweigh the mitigating factors in VanDerbeek's case, we reinstate the presumptive sanction of disbarment.

## The *Noble* Factors

¶63 VanDerbeek argues that the revised *Noble* factors of unanimity and proportionality require a lesser sanction. *Kuvara*, 149 Wn.2d at 259. This court gives less deference to "the decision of a divided board." *Whitt*, 149 Wn.2d at 723. Here, the Board ruled 9-4 in favor of VanDerbeek's two-year suspension. DP at 4. Four members of the Board dissented, arguing that VanDerbeek's misconduct merited disbarment. DP at 5 n.3. Since the Board was far from unanimous and a majority of the Board improperly considered three mitigating factors, the *Noble* factor of unanimity does not warrant departure from disbarment.

¶64 Next, VanDerbeek argues that disbarment is not proportional. "Under proportionality review, we analyze whether a presumptive sanction is proper by comparing the case at hand with other similarly situated cases in which the same sanction was approved or disapproved." *In re Disciplinary Proceeding Against Miller*, 149 Wn.2d 262, 285, 66 P.3d 1069 (2003). In *Kagele*, we stated that the attorney facing discipline must bring forth cases demonstrating the disproportionality of the sanction imposed. 149 Wn.2d at 821.

¶65 VanDerbeek relies on our decision in *Dann*, 136 Wn.2d 67. In *Dann*, we upheld a one-year suspension for violations of RPC 8.4(c). *Id.* at 86-87. There the attorney had billed four clients for work that was actually completed by associate attorneys who billed at a lower rate, engaged in initial-switching on time slips submitted to the client,

and misrepresented to clients as to who was actually working on their cases. *Id.* at 78-79. The hearing officer considered five mitigating factors: " '(a) absence of a prior disciplinary record; (d) timely good faith effort to make restitution or to rectify the consequences of some misconduct; (i) delay in disciplinary proceedings; and, (l) remorse.' " *Id.* at 82 (quoting Clerk's Papers at 155-56). We noted that Dann had engaged in serious misconduct which could arguably merit disbarment, but we ultimately upheld the Board's recommendation to impose a one-year suspension. *Id.* at 87.

¶66 The WSBA claims that *Dann* is not comparable to VanDerbeek's case because: (1) the presumptive sanction in *Dann* was suspension; (2) VanDerbeek acted intentionally while Dann acted knowingly; (3) Dann merely switched initials while VanDerbeek "intentionally padded bills to the financial detriment of clients"; (4) VanDerbeek continued to "engage in bill padding" even after she settled the lawsuit for her unlawful billing practices; (5) VanDerbeek's clients were vulnerable; and (6) VanDerbeek engaged in misconduct for a substantial period of time with numerous victims, while Dann's misconduct involved only four clients. WSBA's Br. at 47-48.

¶67 We agree with the WSBA. The WSBA correctly notes that the presumptive sanction in *Dann* was suspension not disbarment. 136 Wn.2d at 80. Further, the hearing officer and Board found that VanDerbeek had *intentionally* billed excessive and unreasonable fees for simple form pleadings, one-page letters, and notices of intent to withdraw. Unlike the attorney in *Dann*, VanDerbeek failed to end her unethical billing practices even after the 1996 settlement of her clients' civil lawsuit. Most importantly, VanDerbeek's clients were, by her own admission, vulnerable. Thus, significant factors exist here to justify disbarment.

## Costs

¶68 Finally, we turn to the issue of costs. Pursuant to ELC 13.9(a), the Board chair awarded the WSBA $48,636.07 for costs and expenses incurred by the WSBA in VanDerbeek's disciplinary proceeding.[31] ELC 13.9(f)(1) states that "[i]n matters reviewed by the Supreme Court under title 12, the Chair's decision is subject to review only by the Court."[32] This court typically reviews attorney fee and cost awards for abuse of discretion. *See Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 519, 910 P.2d 462 (1996); *see also King County Water Dist. No. 90 v. City of Renton*, 88 Wn. App. 214, 228-29, 944 P.2d 1067 (1997). We will find abuse "only when the exercise of . . . discretion is manifestly unreasonable." *Rettkowski*, 128 Wn.2d at 519.

¶69 VanDerbeek contends that, pursuant to ELC 13.9(h), "interests of justice" demand a reduction of the Board chair's cost award. She claims that these costs were a result of the method that the WSBA employed to investigate and litigate her case, and given that the WSBA has failed to prove parts of its complaint, this court should reduce the award. VanDerbeek, however, does not point to any specific costs that she claims are improper. Moreover, she ignores that the hearing officer and/or Board concluded that she violated most of the charges the WSBA had alleged in its complaint. Thus, she has failed to show that the Board chair's costs are "manifestly unreasonable," or that the "interests of justice" require us to reduce the award. *Rettkowski*, 128 Wn.2d at 519; ELC 13.9(h).

---

[31] ELC 13.9(a) provides that: "The Association's costs and expenses may be assessed as provided in this rule against any respondent lawyer who is ordered sanctioned or admonished."

[32] VanDerbeek posits that under ELC 13.9(g), our review of the chair's decision occurs "after the court enters it[s] decision and pursuant to RAP Title 14." VanDerbeek's Br. at 42. However, it appears that ELC 13.9(f) provides a vehicle for attorneys to seek review of the chair's assessment of costs when they appeal their sanctions to this court. When an attorney does not seek review of the chair's assessment but appeals his or her sanction to this court or this court affirms the chair's cost award, ELC 13.9(g) provides the mechanism for ensuring that such costs are properly awarded by this court.

## III

## CONCLUSION

¶70 VanDerbeek has failed to show that any of the hearing officer's findings of fact are unsupported by the evidence. She has also failed to demonstrate that the Board improperly reinstated violations of RPC 1.5(a) in count IV. We affirm the hearing officer's and Board's conclusion on count V that VanDerbeek violated RPC 1.5(a) and 8.4(d) by filing improper attorney liens and billing clients for fees and costs incurred in connection with those liens. However, while the hearing officer and the Board correctly determined that the presumptive sanction is disbarment, neither the hearing officer nor the Board properly weighed the mitigating factors when they reached their decision that VanDerbeek's misconduct justified only a two-year suspension. Independently weighing the aggravating and mitigating factors here, we hold that disbarment is the appropriate sanction. The revised *Noble* factors of unanimity and proportionality do not merit departure from this sanction. Lastly, we affirm the Board chair's award of costs to the WSBA.

ALEXANDER, C.J.; CHAMBERS, OWENS, and FAIRHURST, JJ.; and KURTZ, J. Pro Tem., concur.

¶71 IRELAND, J. (dissenting) — The majority opinion discounts several mitigating factors considered by the Washington State Bar Association (WSBA) Disciplinary Board (Board). First is the remoteness of Diane VanDerbeek's 1987 fishing license offense. While "remoteness" is susceptible to judgment, I would not disturb the Board's finding of remoteness under the facts of this case.

¶72 The majority also fails to take into consideration the substantial settlement made by VanDerbeek in the civil suit concerning these same issues, which was settled in 1996. The WSBA did not undertake its investigation of grievances filed until 1999. The majority fails to take into

account the several hundred thousand dollar civil settlement which was paid long before this discipline action was instituted. A settlement is by its nature a voluntary action and was not compelled.

¶73 In the American Bar Association's *Standards for Imposing Lawyer Sanctions,* standards 9.4(a) & commentary, the ABA makes it clear that "[l]awyers who make restitution voluntarily and on their own initiative demonstrate both a recognition of their ethical violation and their responsibility to the injured client or other party." Since VanDerbeek entered into her settlement some three years prior to the WSBA commencing an investigation for discipline, the settlement should be taken into consideration as the Board did. This is a significant mitigating factor disregarded by the majority.

¶74 The majority states that VanDerbeek continued to commit misconduct in her billing after she and her plaintiffs settled. It is difficult to understand why VanDerbeek continued to blindly rely on her husband and did not personally follow through to make sure the billing software and practices complied with the Rules of Professional Conduct after the settlement. However, this fact should not simply erase the mitigation. The several hundred thousand dollar settlement should be proportionately considered in mitigation. It is significant that those plaintiffs in the suit who were harmed received restitution. The Board properly considered this mitigation.

¶75 The Board reversed the finding of the hearing officer in Count XI concerning unfitness to practice law. The WSBA did not appeal that conclusion. The majority holds that VanDerbeek's good reputation as a lawyer was properly considered by the Board. Granting that the violations based upon billing practices were serious, I would not disturb the Board's 9-4 determination that a two year suspension was the proper sanction. Therefore, I dissent.

JOHNSON and MADSEN, JJ., concur with IRELAND, J.