[No. 47109–6.  En Banc.  January 14, 1982.]

RIDGEVIEW PROPERTIES, *Respondent*, v. CHARLES A. STARBUCK, ET AL, *Appellants*.

*Reed, Otterstrom & Giesa, P.S.,* by *D. Roger Reed,* for appellants.

*Clausen & Brown,* by *Thomas H. Brown,* for respondent.

HICKS, J.—This case is here on a direct appeal which we retained. It arises from a real estate transaction in Spokane County. Appellants Starbuck claim violations by respondent of the Consumer Protection Act, RCW 19.86, and breach of fiduciary duties. The trial court found to the contrary. We affirm.

Respondent Ridgeview Properties (Ridgeview) is a licensed real estate brokerage firm whose sole shareholders are Don Bunge and Larry Phillips. Bunge and Phillips are also joint owners of Bunge Construction, Inc.

In September 1977, appellants Charles and Diane Starbuck wanted to purchase a lot in the South Ridge Fourth Addition to Spokane owned by Bunge Construction. During the period here involved, Bunge owned eight lots in the South Ridge area. Under an oral listing agreement, the lots were offered for sale through Ridgeview which was to receive a 6 percent commission for its services. The commission was to be based on the combined value of the lot and the house to be built thereon and was to be paid by the buyer as part of the purchase price.

The Starbucks were advised of the terms and conditions of the sale and in September 1977, they signed an earnest money agreement for the sale of the lot conditioned upon Bunge Construction building a custom home for them. The earnest money agreement, however, did not state that appellants were required to pay Ridgeview's commission. Nor were the Starbucks told that Phillips and Bunge were joint owners of both Ridgeview and Bunge Construction, Inc.

The Starbucks paid for and obtained title to their lot on December 13, 1977, and on December 14, they entered into an agreement with Bunge Construction for the construction of the home. In March 1978, a dispute arose as to whether the Starbucks were required to pay a real estate commission on the value of the lot. Ridgeview agreed to waive the commission on the lot, limiting its commission to the value of the house to be constructed on the lot. Thereafter, on March 10, 1978, the Starbucks entered into a second construction contract with Bunge Construction. This agreement provided in part:

(3) It is to be understood that Ridgeview Properties, Inc. is charging a 6% Real Estate Commission of total package excluding lot at $17,950, to be paid for by purchaser at conclusion of construction and closing by bank.

The home was completed in November 1978 and in January of 1979, the Starbucks received a bill from Ridgeview for a commission of $5,321.18, 6 percent of the value of the house constructed on their lot. They refused to pay and this action ensued. The Starbucks counterclaimed, alleging respondent violated the Consumer Protection Act by creating an illegal tying arrangement[1] and by failing to disclose a dual agency relationship. They further allege that respondent breached its fiduciary duties as agent, by failing to disclose the cross–ownership of Ridgeview and Bunge Construction.

The trial court ruled that the construction and real estate services were a package arrangement between the parties and the real estate commission was a component part of the purchase price, not a charge for a separate and distinct product. Thus the court held there was no illegal tying arrangement. The court also found that there had been no dual agency relationship and, thus, no breach of fiduciary duties. Accordingly, the trial court dismissed all the Starbuck counterclaims.

---

[1]Appellants did not allege any violation due to the requirement that Bunge build the house on the lot.

On appeal, the Starbucks contend that the trial court erred in failing to find that a dual agency relationship existed. Error is assigned to the following findings of fact and conclusions of law relating to this issue:

> Throughout this entire transaction, plaintiff Ridgeview Properties was the real estate agent of the seller and at no time did Plaintiff act as the agent of Defendants–purchasers. A dual agency relationship was not established at any time during this transaction.

Finding of fact No. 14.

> The agreement that Defendants pay the real estate commission is an express agreement supported by adequate consideration and does not establish an agency relationship between Plaintiff and Defendants.

Finding of fact No. 15.

> That the Defendants–counterclaimants failed to meet their burden of proof on their counterclaims and the same shall be dismissed with prejudice.

Conclusion of law No. 5.

■ Finding of fact No. 14 consists of two statements. The first is a finding of fact, whereas the second is a conclusion of law. Findings of fact which are conclusions of law will be interpreted as conclusions of law. *Local 1296, Int'l Ass'n of Firefighters v. Kennewick,* 86 Wn.2d 156, 542 P.2d 1252 (1975); *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 501 P.2d 290 (1972).

■ As we have consistently stated, where the trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment. *Holland v. Boeing Co.,* 90 Wn.2d 384, 390, 583 P.2d 621 (1978); *Morgan v. Prudential Ins. Co. of America,* 86 Wn.2d 432, 545 P.2d 1193 (1976). Substantial evidence is evidence in sufficient quantum to persuade a fair–minded person of the truth of the declared premise. *Holland,* at 390–91; *In re Snyder,* 85 Wn.2d 182, 532 P.2d 278 (1975).

We have carefully reviewed the record of this case and

find there is substantial evidence to support the court's findings. We cannot substitute our judgment for that of the trial court. *Seattle–First Nat'l Bank v. Brommers,* 89 Wn.2d 190, 199, 570 P.2d 1035 (1977). Our review also reveals that the findings support the court's conclusion. Thus, we affirm the trial court's finding that no dual agency relationship existed and its concomitant dismissal of the appellants' counterclaims based upon the existence of such a relationship.

Appellants' next contention relating to the existence of an illegal tying arrangement refers to the agreements between Ridgeview and Bunge and the requirement that purchasers of lots pay the real estate commission. Bunge and Ridgeview agreed that Ridgeview would list and sell the homes or provide a purchaser for the lots, receiving a 6 percent commission for its services. They further agreed that the terms and conditions of the sale would provide that the commission shall be paid by the purchaser as a component part of the cost.

In sum, the Starbucks negotiated with Ridgeview and Bunge and after some question as to their liability for the commission, they signed an agreement providing that they would pay the commission. They were fully informed of the circumstances under which Bunge Construction would agree to sell them a lot. Their decision to accept the sellers' terms, including the payment of the 6 percent commission, is demonstrated in the various documents they signed.

The Starbucks, however, assert that they should not be required to pay the commission because they were victims of an illegal tying arrangement. They contend that an illegal tying arrangement exists here because Bunge and Ridgeview entered into an agreement whereby Bunge would not sell its lots unless the buyer also purchased real estate services from Ridgeview.

[A] tying arrangement may be defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that

product from any other supplier. *Northern Pac. Ry. v. United States,* 356 U.S. 1, 5–6, 2 L. Ed. 2d 545, 78 S. Ct. 514 (1958).

In the instant case we find there is no tying arrangement, hence, there is no illegal tying arrangement. In order to constitute a tying arrangement, the purchaser of the tying product must be compelled to actually purchase or use another product or service. *See, e.g., United States v. Loew's, Inc.,* 371 U.S. 38, 9 L. Ed. 2d 11, 83 S. Ct. 97 (1962) (seller conditioned the license or sale of feature films upon purchaser accepting a package containing the desired feature film together with unwanted or inferior films); *Northern Pac. Ry. v. United States, supra* (requirement in the deeds or leases of railroad property compelling grantees and lessee to ship over the railroad's lines all commodities produced or manufactured on the land); *International Salt Co. v. United States,* 332 U.S. 392, 92 L. Ed. 20, 68 S. Ct. 12 (1947) (leases of a patented dispensing machine were conditioned on the lessee's purchasing the lessor's salt); *Siegel v. Chicken Delight, Inc.,* 448 F.2d 43 (9th Cir. 1971), *cert. denied,* 405 U.S. 955, 31 L. Ed. 2d 232, 92 S. Ct. 1173 (1972) (as a condition to obtain trademark licenses, franchisees were required to purchase cooking equipment, food items, and packaging exclusively from defendant); *Moore v. Jas. H. Matthews & Co.,* 550 F.2d 1207 (9th Cir. 1977) (purchasers of cemetery lots were required to purchase memorials from or through the cemetery).

Unlike the cases cited above that are within the definition of a tying arrangement, the instant case does not involve a situation where the purchasers were required to purchase a product or service separate from the alleged tying product. The Starbucks merely agreed to pay for services rendered to another, *i.e.,* Bunge by Ridgeview. The arrangement was simply a means to pass on specific contractor costs to the purchasers. Ridgeview did not perform services for the Starbucks. Rather, as the trial court found, throughout the transaction Ridgeview acted as agent for

and rendered services only to Bunge. The Starbucks were not required to purchase or use[2] the real estate services of Ridgeview. Accordingly, we hold the agreement entered into between the parties did not constitute a tying arrangement as defined in *Northern Pac. Ry.* and is not an illegal tying arrangement violative of the Consumer Protection Act.

We affirm the judgment of the trial court.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, and DIMMICK, JJ., concur.

---

[2]In fact, the Starbucks used independent legal counsel during the transaction.