

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2014 MAR 10 AM 11: 11

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Detention of M.T., | ) ) ) ) | No. 70238-6-I |
| Appellant, | ) ) | |
| v. | ) ) ) | |
| STATE OF WASHINGTON, | ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) | FILED: March 10, 2014 |

PER CURIAM. M.T. appeals her involuntary civil commitment, arguing that the State presented insufficient evidence to support the court's finding that she suffered from a grave disability. We affirm.

On March 17, 2013, M.T.'s son brought her to the emergency room at Harborview Medical Center, where she was admitted due to multiple recent falls and failure to thrive. Hospital records noted her history of major depressive disorder and obsessive-compulsive disorder (OCD). M.T. received treatment for chronic leg ulcers that were not healing due to malnutrition and poor wound care.

On March 26, the State filed an involuntary commitment petition alleging that M.T. was gravely disabled and should be committed for 14 days.

On March 27, the superior court held a hearing on the petition. The State presented testimony from Dr. Allison Osborn, a licensed clinical psychologist and evaluator for Harborview; Dr. Elsa Haloman, a Harborview psychiatry resident; and

Cathy Erskine, a social worker for the Department of Social and Health Services (DSHS).

Dr. Osborn testified that M.T. suffers from OCD and major depressive disorder, and that the disorders have a substantial adverse impact on her cognitive and volitional functions. Regarding her OCD, Dr. Osborn testified that M.T. scored 37 on an OCD test that has a maximum score of 40. She testified that M.T. is extremely phobic and fearful of germs. As a result, M.T. has extreme compulsions or rituals that interfere with her self-care. Dr. Osborn noted that prior to entering the hospital, M.T.'s rituals required so much time that she would only intake food, water, and medication once every three to eight days. While in the hospital, M.T. reported fears of contamination, particularly of dirt or germs entering her mouth, and told staff that she would not eat or drink and would continue to starve herself. Dr. Olson concluded that M.T. was gravely disabled and at risk of serious physical harm as a result of her mental disorders. She recommended that M.T. be committed for up to 14 days, adding that a less restrictive alternative would not meet her needs.

Dr. Haloman testified that M.T. suffers from chronic ulcers on her legs, which are complicated by her malnourishment. M.T. has also fallen multiple times and because her bones have not healed correctly, she is unable to walk. She needs surgery to regain her ability to walk but is too malnourished for surgery. M.T. has also tested positive for methicillin-resistant staphylococcus aureus (MRSA), an antibiotic-resistant bacterium that puts her at risk for superinfections, sepsis, amputation, and death. Dr.

No. 70238-6-I/3

Haloman concluded that M.T. was gravely disabled and that it was not safe for her to leave the hospital.

Cathy Erskine testified that DSHS attempted to place M.T. at every nursing facility in the state of Washington. The only facility that accepted her in the past would no longer accept her due to her noncompliance with care. If discharged from the hospital, M.T. would only have the assistance of her son.

M.T. testified and agreed that she should stay in the medical unit of the hospital but objected to psychiatric treatment. M.T. further testified that if provided with a care plan, she would follow it.

The court granted the petition for M.T.'s involuntary commitment. M.T. appeals.

DECISION

The sole issue on appeal is whether the State presented sufficient evidence to prove that M.T. was gravely disabled.[1] Our review is limited to "determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment." In re Detention of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986) (citing Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982)).

---

[1] Although the challenged commitment terminated long ago, the State has not argued that the case is moot and expressly requests that this court resolve the appeal on the merits. M.T. argues in part that the case is not moot because a reversal would restore her right to possess a firearm. Under the circumstances, we exercise our discretion to decide the appeal on the merits.

No. 70238-6-I/4

To grant the State's petition in this case, the superior court had to find by a preponderance of the evidence that M.T. was gravely disabled as a result of a mental disorder. RCW 71.05.240(3).

> [U]nder the gravely disabled standard, the State must present recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded.

LaBelle, 107 Wn.2d at 204-05.

Here, it is undisputed that M.T. suffered from serious, long-standing mental disorders at the time of her commitment. The State provided substantial evidence that M.T. was gravely disabled by those disorders. The State's witnesses testified that her disorders significantly interfered with her self-care and care by others, resulting in malnourishment. In turn, her malnourishment contributed to her chronic ulcers, infection, recent falls, broken bones, and immobility. These conditions put M.T. at serious risk of amputation, injury, or death. There is thus substantial evidence that M.T. is in danger of serious physical harm due to a failure or inability to provide for her essential human needs.

M.T. contends the court overlooked her "commitment to her own care" and her requested alternative of remaining on the medical floor. But as noted above, there was evidence that M.T. had minimal insight into her condition, overwhelming evidence that her "commitment" did not translate into action, and evidence that involuntary commitment was the least restrictive alternative capable of remedying her situation.

4

The credibility, weight, and persuasiveness of the evidence are matters for the trier of fact. State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

Affirmed.

FOR THE COURT: