# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

LORINA DEL FIERRO, )
                           )
         Appellant, )
                           )
         v. )
                           )
BSI FINANCIAL SERVICES; DEL TORO )
LOAN SERVICING, INC.; MARINERS )
INVESTMENT FUND, LLC; MARINERS )
INVESTMENT FUND II REO, LLC; SECOND )
MARINERS RES FUND II, LLC; AMERICAN )
DEFAULT MANAGEMENT; PENSCO TRUST )
COMPANY CUSTODIAN FBO, JEFFERY D. )
HERMANN, IRA ACCOUNT NUMBER )
20005343; APRIL SMITH in her individual and )
official capacity; JEFFERY D. HERMAN in his )
individual and official capacity, JENNIFER TAIT )
in her individual and official capacity; and )
STEVE OLSON in his individual and official )
capacity. )
                           )
         Respondents. )

No. 73016-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 16, 2015

SPEARMAN, C.J. — This appeal is from a trial court's findings of fact and conclusions of law regarding a borrower's claims against a series of entities involved in the transfer of her loan. We find no error and affirm.

## FACTS

In 2006, Lorina Del Fierro purchased property real property located at Lot 83, Twin Lakes No. 4, Vol. 91, pgs. 44-46, tax parcel No. 873196-0830-00, commonly known as 4009 SW 323rd Street, Federal Way, Washington (the Property). She refinanced the property in 2007 with EquiFirst Corporation (EquiFirst), taking out a loan of $572,850.00 to be repaid according to the terms

of an Adjustable Rate Note (Note). EquiFirst endorsed the Note in blank. The Note was secured by a deed of trust (Deed of Trust) on the Property that listed First American Title Insurance Company (First American) as trustee and Mortgage Electronic Registration Systems (MERS) as the beneficiary. The loan itself was serviced by Specialized Loan Servicing, Inc., (Specialized). In 2008, Del Fierro ceased making payments on the loan.

The Note and the Deed of Trust were transferred multiple times before arriving in the hands of respondent Pensco Trust Company (Pensco). Equifirst sold the loan to Sutton Funding LLC (Sutton). On September 12, 2008, Sutton sold its interest in the loan to a third party known as FCDB FF1, LLC. On January 5, 2009, MERS recorded an Appointment of Successor Trustee, appointing Fidelity National Title Insurance Company (Fidelity) as trustee. On April 14, 2009, FCDB FF1, LLC, as part of a group of entities known collectively as Fortress Investment Group (Fortress)[1], sold their interests in number of residential first lien mortgage loans, including Del Fierro's loan, to Second Mariners Investment Fund II REO, LLC, and Mariners Investment Fund II, LLC (individually, Mariners 4 and Mariners 5; collectively, "Mariners"). As part of this sale, Fortress provided Mariners with the original Note.

Specialized, on behalf of MERS, began foreclosure proceedings in early 2009. Fidelity issued a Notice of Trustees Sale on February 9, 2009, setting the

---

[1]During trial, there was some confusion over whether FCDB FF1, LLC, the entity that purchased the loan from Sutton, was the same as any of the entities that sold the series of loans to Mariners. Steve Olson testified that Mariners purchased the Del Fierro loan from Fortress, which "had multiple sellers, different entities internally when [Mariners] purchased from them," and that Fortress had purchased the loan from Sutton. Verbatim Report of Proceedings (Nov. 3, 2014) at 48-49.

sale date for May 15, 2009. Del Fierro began working with a loan modification representative, Michael Colwell, who contacted Fidelity on her behalf. On May 7, 2009, the sale was placed "on hold." Somewhere around the 7th or the 8th, Fidelity informed Colwell that the sale was on hold, and that it would not take place on the 15th as originally set. On May 12, 2009, however, the sale was taken off "on hold" status and the servicing rights were transferred to BSI Financial Services (BSI). Del Fierro and Colwell were both told that the sale was on hold and would not proceed, even after each made separate inquiries up to the scheduled date of sale. On May 15, 2009, Fidelity proceeded to sell the Property at auction. Mariners 4 purchased the Property for $370,000 and initiated an unlawful detainer action on June 4, 2009.

The King County Superior Court dismissed the unlawful detainer action, finding that Fidelity had made material misrepresentations and breached its duty to act in good faith and impartially to both parties. The trial court voided the trustee's sale and reinstated the Deed of Trust to its original lien position.

On March 11, 2010, MERS assigned the Deed of Trust to Mariners 4.[2] On December 8, 2010, Mariners 4 assigned the Deed of Trust to Mariners 5. Ex. 11. On May 19, 2011, Mariners 5 executed a Residential Mortgage Loan Sale

---

[2] In Bain v. Metropolitan Mortg. Group, Inc., 175 Wn.2d 83, 110, 285 P.3d 34 (2012), our Supreme Court held that if MERS never held the promissory note or other debt instrument, it was not a lawful beneficiary and could not appoint a successor trustee. MERS therefore did not have independent authority to assign the Deed of Trust to Mariners. The Bain court declined to decide the legal effect of MERS acting as an unlawful beneficiary, but that "the equities of the situation would likely (though not necessarily in every case) require the court to deem that the real beneficiary is the lender whose interests were secured by the deed of trust or that lender's successors." Id. at 111. Based on this notion, Mariners would likely have been deemed the beneficiary anyway, having succeeded to EquiFirst's interest (via transfers involving Sutton and Fortress) in the Note. Mariners was also the holder of the Note at that time and MERS's involvement would not have affected the validity of the Deed of Trust or Mariners' interest.

Agreement, selling its interest in Del Fierro's loan, including the Note and the Deed of Trust, to Pensco.

In 2010, Mariners initiated foreclosure proceedings on the Deed of Trust. Del Fierro filed for Chapter 13 bankruptcy on April 5, 2010. In July 2010, Del Fierro filed an Adversary Proceeding in bankruptcy court to determine the amount of the lien. The bankruptcy court reduced the secured debt from $572,291.63 to $325,000.00. Mariners appealed and lost. On October 18, 2010, Del Fierro stipulated to an order requiring her to make monthly payments to the court. Mariners transferred its claim on June 6, 2011 to Pensco and listed Del Toro Loan Servicing, Inc. ("Del Toro") as the loan's servicer. Del Fierro did not object to this transfer. She continued making payments as per the stipulation until August of 2011, when she converted her bankruptcy action to a Chapter 11. Her bankruptcy action was dismissed on November 13, 2012.

The original Note remained in Mariners' possession until it was requested by Mariners' counsel, Robinson Tait P.S. (Robinson Tait), in case it was needed in the bankruptcy litigation. The original Note was shipped to Robinson Tait on March 24, 2011, along with a bailee letter. On March 25, 2011, Robinson Tait acknowledged receipt of the Note. Because Robinson Tait had the original Note, Mariners did not forward it to Pensco when the sale closed in May 2011. Pensco then retained Robinson Tait and asked them to continue holding the Note.

Even though they were holding the original Note for Pensco, Robinson Tait sent it back to Mariners on April 3, 2012, under the terms of the bailee letter executed with Mariners. The intent was for Mariners to send the original Note to

4

Pensco. Mariners received the original Note, but was unable to find it after a diligent search. Pensco never received the original Note.

In 2012, Del Fierro filed a lawsuit in King County Superior Court regarding the transfer of the loan, alleging claims such as fraud, conversion, slander of title, unjust enrichment, quiet title, and violations of chapter 19.86 RCW, the Consumer Protection Act; RCW 19.86.010, the Uniform Deceptive Trade Practices Act, and chapter 19.182 RCW, the Fair Credit Reporting Act. She named multiple defendants including BFI, Del Toro, Mariners,[3] Equifirst, MERS, American Default Management, Pensco's custodian, Jeffrey Hermann,[4] and other named individuals who were involved in notarizing the transfer documents.

Del Fierro argued that Pensco had no right to enforce the Note because it did not have the original Note. Mariners, Hermann, and Robinson Tait each filed Lost Note Affidavits indicating that the original Note was held by Robinson Tait, counsel for Pensco, at the time Pensco purchased the loan, and that it had been lost after Robinson Tait sent it back to Mariners. Mariners and other defendants moved for summary judgment. The court granted summary judgment and dismissed Del Fierro's claims for conversion, slander of title, violation of the Uniform Deceptive Trade Practices Act, violation of the Fair Credit Reporting Act, and portions of the claim for Unjust Enrichment. The remaining claims including Notary Malfeasance, Notary Negligence, Unjust enrichment (pending evidence of

---

[3] Del Fierro also named a number of additional Mariners entities in her complaint but only Mariners 4 and Mariners 5 are involved in the transfer and sale of Del Fierro's loan.

[4] Del Fierro argues that it is important to note that "counsel for Mariners represented Hermann in his individual capacity but [] did not represent Pensco the company..., the real player in this litigation." Brief of Appellant at 40. However Del Fierro did not name Pensco as a defendant in this action.

the price Pensco paid for the loan), and quiet title, proceeded to a bench trial on October 28, 2014.

The trial court found that the Note had been endorsed in blank and that Pensco had the right to endorse it as the holder at the time it was lost under RCW 62A.3-309. The court entered judgment in favor of defendants and reserved an award of fees and costs. Del Fierro appeals.

DISCUSSION

Del Fierro assigns error to a number of the trial court's findings regarding the transfers of the Note and Deed of Trust. When a trial court has reviewed the evidence, our review is limited to determining whether the trial court's findings are supported by substantial evidence, and if so, whether those findings support the conclusions of law. Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). Findings of fact will be upheld on appeal if they are supported by "'a sufficient quantity of evidence to persuade a fair-minded person of [the order's] truth or correctness." Raven v. Dep't. of Soc. & Health Servs., 177 Wn.2d 804, 817, 306 P.2d 920 (2013) (quoting Port of Seattle v. Pollution Control Hr'gs Bd., 151 Wn.2d 568, 588, 90 P.3d 659 (2004)). We will not substitute our judgment for that of the trial court or weigh evidence or credibility of witnesses. Davis v. Dep't of Labor & Indus. 94 Wn.2d 119, 124, 615 P.2d 1279 (1980).

Endorsement of the Note

Del Fierro first argues that the allonge endorsing the note in blank was defective and that as a result, Mariners 4 was never the holder of the Note. She contends that because the endorsement was on a separate sheet of paper, and there were "no clip marks, folds, or glue marks," it was not "firmly affixed" to the

6

Note in order to make it negotiable. Brief of Appellant at 21. Respondents argue that testimony from witnesses clearly established that the Note included the allonge, which was sufficiently affixed to it, and Del Fierro has not presented any evidence to the contrary.

Under RCW 62A.3-204(a), an indorsement is a signature made on an instrument for the purposes of negotiating the instrument. An indorsement-in-blank is an indorsement that is not payable to an identified person. RCW 62A.3-205(b). Thus an instrument indorsed-in-blank becomes payable to bearer and any person who possess the instrument becomes its holder. RCW 62A.3-204(a) also provides that for the purposes of determining whether a signature is made on an instrument, a paper affixed to the instrument is part of the instrument. Comment 1 to RCW 62A.3-204. This section requires an allonge to be "so firmly affixed" to the check "as to become a part thereof." Id. A separate paper, or one pinned or clipped to the check, will not suffice. 7 WASHINGTON PRACTICE, Uniform Commercial Code (UCC) Forms § 3-205 Form 2 (2015) (citing Tallahassee Bank & Trust Co. v. Raines, 125 Ga.App. 263, 187 S.E.2d 320, 312 (1972); Duxbury v. Roberts, 388 Mass. 385, 446 N.E.2d 401 (1983) (separate document assigning the note did not constitute an endorsement).

Respondents argue that even though the allonge is on a separate page, there is ample testimony in the record showing that the allonge in blank was affixed to the original Note. Jennifer Tait of Robinson Tait testified that the last page of the note, titled "'Note Endorsements,'" was part of all one package with the original Note. VRP (Oct. 29, 2014) at 121-22. Steve Olson of Mariners also testified that while Mariners purchased the Note from Fortress, Equifirst was the

originator and "sign[ed] on the note endorsement on the last page." VRP (Nov. 3, 2014) at 38-39. Olson also testified that he was familiar with the requirements of endorsements in blank and that Mariners would have checked to make sure that the Note was endorsed in such a way that it would permit them to negotiate that note to someone else. Del Fierro has presented no controverting evidence demonstrating that the allonge was not included or attached to the Note.[5] We find no error in the trial court's finding that the Note was properly endorsed in blank and the allonge was "firmly affixed" under chapter 63A-309 RCW.

Del Fierro assigns error to a number of the trial court's other factual findings, including findings that Mariners purchased its interest in the loan from FCDB FF1, LLC, that the sale was a good faith, arms-length transaction in which Mariners paid value for the beneficial interest in the loan, and that the sale of the loan to Pensco was an arms-length transaction. These challenges all fail, because there is sufficient evidence in the record to persuade a fair-minded person of the truth of the finding.

Enforcement of Lost Instrument

Del Fierro argues that the trial court erred when it concluded that Pensco had proved it was entitled to enforce the Note and Deed of Trust. She argues that Pensco does not meet the requirements of RCW 62A.3–309(a) because it never had possession of the Note.

---

[5] Del Fierro argues that the testimony should be disregarded because the Mariners failed to lay any foundation for the allonge at trial. The record shows, however, that the testimony by Tait and Olsen established their personal knowledge of the Note and its contents, including the allonge.

Article 3 of the UCC governs who is entitled to enforce a promissory note. RCW 62A.3–301 provides that a "[p]erson entitled to enforce" an instrument"

> means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3–309 or 62A.3–418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

A holder, in this case, is a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." RCW 62A.1–201(21)(A).

RCW 62A.3–309 governs the enforcement of lost instruments. The statute requires:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

The trial court found that Robinson Tait was in possession of the original Note on behalf of Pensco as the purchaser, even though it sent the Note back to Mariners in 2012. The record contains testimony from Robinson Tait about the terms of the bailee letter in which they agreed to hold the original Note in custody for Mariners. After the note was purchased, Pensco retained Robinson Tait and asked them to continue holding the Note. The law firm's policy was to return original documents to the entity that sent it to them and for which they have a

9

bailee letter, unless they receive information that they should send it elsewhere. Even though they were holding the original Note on behalf of Pensco, Robinson Tait sent it to back to Mariners as per their document policy. It is undisputed that the intent of the parties was that Mariners would then forward the original Note to Pensco.

We find that there is sufficient evidence in the record to support the trial court's findings of fact, which in turn, support the conclusion that Pensco was entitled to enforce the Note under RCW 62A.3–309. The trial court did not err in concluding that Pensco was in possession of the original Note, endorsed in blank, when its loss occurred; the loss was not a result of a transfer by Pensco or a lawful seizure; and Pensco could not reasonably obtain possession of the original Note because its whereabouts could not be determined.

Evidentiary Rulings and Discovery Sanctions

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 669, 230 P.3d 583 (2010). A trial court abuses its discretion when its decision "is manifestly unreasonable or based on untenable grounds or reasons." Id., (quoting State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)). A "'manifestly unreasonable decision is one that adopts a view that no reasonable person would take.'" Id., (quoting In re Personal Restraint of Duncan, 167 Wn.2d 398, 402-03, 219 P.3d 666 (2009)). A decision is based on untenable grounds or untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts. Id. We also review a trial court's sanctions for a party's

noncompliance with discovery orders for an abuse of discretion. Rivers v. Wash. State Conf. of Mason Contractors, 145 Wn.2d 674, 684, 41 P.3d 1175 (2002).

Del Fierro claims that a number of documents relating to the loan transfer should have been excluded because they were incomplete or unsigned, including the Residential Mortgage Loan Sale Agreement and Master Asset Sale and Interim Servicing Agreement. Br. of Appellant at 24. According to Del Fierro, the documents were "not fully executed,... replete with blanks and didn't include cited attachments." Id. She also argues that the purchase and sale agreements should have been excluded because respondents failed to provide them until after the discovery cutoff, and because they lacked foundation, were not authenticated, and were submitted after the parties had rested.

Along with the documents, Del Fierro objects to the trial court's admission of testimony of Mariners and Robinson Tait, because respondents did not ask the court to admit the witnesses' Lost Note affidavits. Del Fierro also argues that because Mariners did not mention Fortress or any of its sub-entities in discovery, the court should not have allowed testimony about them.

A trial court necessarily has broad discretion in ruling on evidentiary matters and imposing sanctions for discovery violations; we will not overturn a trial court's ruling absent manifest abuse of discretion. Sintra, Inc. v. City of Seattle, 131 Wn.2d 640, 662-23, 935 P.2d 555 (1997). Courts may sanction parties under CR 37(b)(2) for two reasons: (1) failure of a party to comply with an order to provide or permit discovery and (3) failure of a party to respond to a request for discovery under CR 33 or CR 34, or to appear after proper notice for a deposition. Pamelin Industries, Inc. v. Sheen-U.S.A., Inc., 95 Wn.2d 398, 401,

622 P.2d 1270 (1981). A trial court should not exclude testimony for abuse of discovery without showing intentional or tactical nondisclosure, willful violation of a court order, or otherwise unconscionable conduct. Barci v. Intalco Aluminum, Corp., 11 Wn. App. 342, 351, 522 P.2d 1159 (1974).

Del Fierro has not shown that respondents have engaged in any such unconscionable conduct. The record shows that respondents produced discovery in response to Del Fierro's request. Del Fierro did not move to compel more complete answers nor did she move for sanctions other than exclusion of the contested documents. We find that it was within the trial court's discretion to refrain from excluding the testimony and documents as a discovery sanction.

Finally, Del Fierro argues that the trial court erred when it dismissed Del Toro from the case with prejudice. She also assigns error to the court's dismissal of the CPA claim on summary judgment and the quiet title claim. But she does not provide factual or legal arguments in support of these assignments. Thus, we do not consider them. RAP 10.3(a)(5); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Del Fierro asks for an award of attorney's fees on appeal based on the provisions of the Note and the Deed of Trust and presumably RCW 4.84.330 and RAP 18.1. Because we affirm the trial court in all respects, we deny her request.

Affirm.

Spearman, C.J.

WE CONCUR:

Leach, J.

Appelwick, J.