

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE ESTATE OF ROBERT M. ARNOLD, deceased, on behalf of BANANA CORPORATION, a Washington corporation, assignee, | ) ) ) ) ) | No. 71050-8-I<br><br>DIVISION ONE |
| Respondent, | ) ) ) | |
| v. | ) ) | |
| MARK PHILLIPS and A-DOT CORPORATION, a Washington corporation, | ) ) ) ) | UNPUBLISHED OPINION |
| Appellants, | ) ) | |
| KENNETH GORDON, JANE DOE GORDON, and the marital community composed thereof; and DOUG LOWER AND MAUREEN LOWER, husband and wife and the marital community composed thereof, | ) ) ) ) ) ) ) | |
| Defendants. | ) | FILED: November 16, 2015 |

SCHINDLER, J. — Mark Phillips appeals the order of partial summary judgment on liability, denial of his motion to dismiss, and the court's entry of findings of fact and conclusions of law and judgment against him for $4,190,000. We affirm in all respects.

FACTS

The material facts are not in dispute. In 2003, Mark Phillips formed A-Dot Corporation (A-Dot), a manufacturing, research, and software development company. Phillips was the sole shareholder, director, and chief executive officer of A-Dot.

In April 2005, Phillips formed MOD Systems Incorporated (MOD), a startup company to develop compact disc kiosks. In July, Phillips transferred all A-Dot employees and assets to MOD Systems.

On June 16, 2006, Phillips formed Banana Corporation (Banana) to develop and market "Metawallet." Metawallet was a mobile payment technology designed to provide mobile banking services in developing countries by using prepaid cell phones.

On June 19, Phillips assigned Banana all "ideas and intellectual property . . . , including any and all derivative works" related to Banana's business plan, ideas, and intellectual property in exchange for stock. The next day, Phillips licensed the same intellectual property to Banana for $2,500,000.

In early 2006, Phillips solicited funding for Banana from Robert M. Arnold. Between June 2006 and May 2007, Arnold invested $5,500,000 in Banana.

Phillips and Arnold were the only shareholders in Banana. Arnold owned a 15 percent interest and Phillips owned an 85 percent interest in Banana.

On July 1, 2006, Phillips on behalf of Banana entered into a "service agreement" with A-Dot. A-Dot agreed to perform work for Banana. In September 2006, Banana loaned A-Dot $2,385,000. Phillips executed a promissory note for the loan with a maturity date of September 1, 2011. Phillips signed the promissory note on behalf of Banana and on behalf of A-Dot.

2

On October 11, 2006, Phillips wired $150,000 from A-Dot to other entities he controlled. Between June and December of 2006, Phillips paid himself "consulting fees" from Banana totaling $1,160,000. On December 13, Phillips paid A-Dot a $1,000,000 "consulting fee" from Banana. The same day, Phillips transferred $1,000,000 from A-Dot to his personal brokerage account.

Phillips also paid his high school friend Douglas Lower substantial amounts of money. Phillips on behalf of Banana paid Lower "consulting fees" totaling $450,000 on July 5 and on August 28, 2006. Phillips made the payments "in advance" based on a June 28, 2006 consulting agreement between Banana and Lower. The consulting agreement did not describe a work assignment, provide a fee schedule, or specify a rate of pay, and there was no documentation for work performed by Lower.

On February 16, 2007, Phillips on behalf of Banana loaned Lower $200,000. Lower executed a promissory note with a maturity date of February 16, 2012. Phillips signed the note on behalf of Banana.

On February 23, 2007, Phillips on behalf of A-Dot wired himself $500,000. On June 22, Phillips on behalf of A-Dot also wired himself $25,000 and made two payments totaling $705,000 for his 2007 personal income taxes. On September 21, Phillips on behalf of A-Dot made a $50,000 "shareholder disbursement" to an unknown account identified as a "foreign wire."

In the spring of 2007, Arnold hired investment advisor Cole Younger to manage his investments. Younger contacted Phillips to obtain financial information for Banana. Phillips did not provide the requested information.

On February 18, 2009, Arnold filed a shareholder derivative lawsuit against Banana. Phillips and the attorneys representing Banana retained auditing firm KPMG LLP to "review and analyze company documents, financial records and electronically stored information that related to allegations of potential misconduct by key Banana shareholders/officers/directors/consultants and personnel."

KPMG partner Guido van Drunen analyzed the corporate and financial records of Banana. Van Drunen also interviewed Phillips, Lower, and Banana bookkeeper Kenneth Gordon. Van Drunen issued a lengthy and detailed report describing the analysis and conclusions (the KPMG Report).

The KPMG Report describes a number of the "transactions entered into between Banana, Phillips, A-Dot and other associated parties or entities." The report concluded there was "no apparent business reason" for the September 2006 loan of $2,385,000 from Banana to A-Dot or the loan of $2,000,000 in February 2007 from Banana to Lower. With respect to the consulting fees of $1,160,000 that Banana paid to Phillips between June and December of 2006, the KPMG Report states, "There are no invoices to evidence either the services provided or work conducted, nor is there other supporting documentation to substantiate the work completed to justify the payments made." According to the KPMG Report, the circumstances surrounding the $450,000 in consulting fees paid to Lower on July 5 and August 28, 2006 suggested that the transactions might be "viewed as a 'sham' " and that there was "no apparent business reason" for the $200,000 loan from Banana to Lower in February 2007. Van Drunen concluded in the KPMG Report that Phillips "acted on both sides of these transactions" and "entered into transactions that were or could be perceived as being conflicts of

4

interest." The KPMG Report states that Phillips did not disclose any of the transactions to Arnold.

In July 2009, Phillips hired Dennis Mandell of Mako Strategies Inc. to review the "questionable financial transactions" addressed in the KPMG Report and "provide litigation, damages, and valuation strategy for the complex allegations of financial fraud against him." Mandell prepared a 39-page report (the Mako Report). Mandell concluded there was "[n]o basis for a finding of embezzlement by Phillips" and Phillips's conflicts of interest "were clearly disclosed to Arnold." The Mako Report states the consulting fees paid to Phillips "were reasonable" and the "A DOT and Lower loans did have business purposes."

On March 12, 2010, Arnold entered into a settlement agreement with Banana. Banana assigned Arnold all claims against Phillips, A-Dot, and "any other person or entity."

On March 12, Arnold filed a lawsuit on behalf of Banana against Phillips, Lower and his spouse, and A-Dot. The lawsuit alleged breach of fiduciary duty in violation of chapter 23B.08 RCW, conversion and embezzlement, corporate waste, unjust enrichment, and breach of contract. Arnold entered into a settlement agreement with Lower. Arnold agreed not to pursue his right to recover the amount Lower owed on the February 2007 loan.

Arnold filed a motion for partial summary judgment on liability against Phillips and A-Dot. In support, Arnold submitted a number of documents including the KPMG Report. Phillips filed a declaration in opposition.

The court granted partial summary judgment on liability against Phillips for breach of fiduciary duty, conversion and embezzlement, corporate waste, and unjust enrichment. The court entered partial summary judgment on liability against A-Dot for breach of contract and unjust enrichment. The order includes findings of fact on liability. The order states, "[T]he following facts are identified pursuant to CR56(d) as without substantial controversy and shall henceforth be deemed established for the purposes of this litigation."

The 11-day trial began on February 5, 2013. Despite entry of the summary judgment order on liability and entry of findings under CR 56(d), the parties presented evidence on liability and damages. A number of witnesses testified including van Drunen, Mandell, Phillips, Arnold's accountant Julia de Hann, and Banana/A-Dot employee Kenneth Gordon. Van Drunen testified at length concerning his analysis and the conclusions reached in the KPMG Report. Van Drunen testified about multiple transactions that created a conflict of interest or lacked any business justification.

Mandell testified that he "looked at the allegations that had been prepared in the KPMG report" and "did not see [the transactions identified in the KPMG Report] as inappropriate costs." Mandell testified the transactions did not constitute embezzlement and Phillips disclosed conflicts of interest. Mandell also testified there was a business purpose for the $2,385,000 September 2006 loan from Banana to A-Dot and the $200,000 February 2007 loan from Banana to Lower.

Arnold passed away during trial. The court entered an order substituting the Estate of Robert M. Arnold on behalf of Banana Corporation as the plaintiff.

At the conclusion of trial, the court entered extensive findings of fact and conclusions of law. The court specifically states that it adopted the summary judgment CR 56(d) findings of fact only to the extent the "evidence presented at trial corroborates and supports" those findings. The court found van Drunen's testimony credible. The court concluded Phillips did not provide notice and did not have the authority to enter into the following transactions on behalf of Banana: (1) the $1,000,000 in consulting fees paid to A-Dot in December 2006; (2) the $1,160,000 in consulting fees paid to Phillips; (3) the $150,000 wired to entities controlled by Phillips in October 2006; (4) the $500,000 Phillips wired from A-Dot to himself in February 2007; (5) the $25,000 Phillips wired from A-Dot to himself in June 2007; and (6) the two payments totaling $705,000 that Phillips used for his personal income taxes in 2007. The court also found that the $200,000 loan from Banana to Lower in February of 2006 "had no apparent business purpose for Banana" and that the $450,000 in consulting fees Phillips paid to Lower "was without business justification, was done without independent board review or approval, . . . and constituted a breach of Phillips' fiduciary duty owed to Banana Corporation." The court entered judgment against Phillips for $4,190,000.

The court found A-Dot repaid only $50,000 of the amount owed on the $2,385,000 promissory note, A-Dot was in default on the promissory note, and entered judgment against A-Dot for $3,095,710.

On October 31, 2013, Phillips filed an appeal of the order granting partial summary judgment, the findings of fact and conclusions of law, and entry of the judgment against A-Dot and himself. On May 30, 2014, Phillips and the attorney representing A-Dot filed a joint opening brief.

ANALYSIS

Motion to Dismiss Appeal of A-Dot

Preliminarily, we address the motion to dismiss the appeal of A-Dot. The Estate

filed a motion to dismiss the appeal of A-Dot. A-Dot filed a motion for relief from the

technically defective notice of appeal filed by Phillips as the sole shareholder of A-Dot.

At the beginning of oral argument, the attorney representing A-Dot withdrew the request

for relief.[1] Accordingly, we grant the motion to dismiss the appeal Phillips filed on behalf

of A-Dot.

Appeal of Phillips

Phillips challenges the order granting partial summary judgment on liability,

denial of the motion to dismiss, the findings of fact and conclusions of law, and entry of

the judgment against him.

Partial Summary Judgment Order

Phillips contends the court erred in granting summary judgment on liability.

Phillips asserts the Mako Report "contradicted each and every material fact" asserted in

support of summary judgment. The Estate contends the Mako Report was not part of

the record on summary judgment and Phillips did not designate the Mako Report as part

of the summary judgment record on appeal. The record on summary judgment does

not include a copy of the Mako Report. However, the record establishes that at trial, the

parties disputed liability. The Estate relied on the KPMG report and Phillips relied on

the Mako Report, and the court entered liability findings and conclusions based on the

evidence at trial. Because the parties presented evidence on the contested issue of

liability, we do not address whether material issues of fact precluded summary

---

[1] Accordingly, we affirm the judgment against A-Dot for $3,095,709.58.

8

judgment. See Johnson v. Rothstein, 52 Wn. App. 303, 307, 759 P.2d 471 (1988) ("[T]he nature of a summary judgment is such that once the issues have been tried to a finder of fact, the summary judgment procedure to determine the presence of genuine, material issues of fact has no further relevance.").

Motion to Dismiss

Phillips argues the court erred in denying his motion to dismiss under King County Superior Court Local Civil Rule (KCLCR) 4(i)(1). KCLCR 4(i)(1) states the failure of a party seeking affirmative relief "to appear for trial on the scheduled trial date will result in dismissal of the claims." We review a trial court's decision on a motion to dismiss for manifest abuse of discretion. Escude v. King County Pub. Hosp. Dist. No. 2, 117 Wn. App. 183, 190, 69 P.3d 895 (2003). "A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons." Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010).[2]

At the beginning of the trial on February 5, Phillips moved to dismiss on the ground that Arnold was not present. The attorney told the court that "Mr. Arnold is 85 years old and in poor health. . . . He will at some point in time appear and testify, if that is necessary."

The next day, Arnold filed a motion to excuse his attendance at trial. The declaration in support of the motion states that Arnold was recuperating at his home in California from cardiac surgery performed two weeks earlier. The declaration states that according to his doctor, it was "not advisable for Mr. Arnold to travel to Washington at the present time, and he cannot be subjected to any form of stress during his recuperation."

---

[2] Internal quotation marks omitted.

The court granted the motion to excuse Arnold from attending trial. Arnold passed away before the conclusion of trial on February 27. We conclude the decision to excuse Arnold from attending trial was not manifestly unreasonable or based upon untenable grounds.

Findings of Fact and Conclusions of Law

Phillips contends substantial evidence does not support the findings. We review the decision following a bench trial to determine whether substantial evidence supports the findings of fact and whether those findings, in turn, support the conclusions of law. Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). Substantial evidence is the quantum of evidence "sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). We will not "disturb findings of fact supported by substantial evidence even if there is conflicting evidence." Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). We defer to the trial judge on issues of witness credibility and persuasiveness of the evidence. Boeing Co. v. Heidy, 147 Wn.2d 78, 87, 51 P.3d 793 (2002); City of Univ. Place v. McGuire, 144 Wn.2d 640, 652, 30 P.3d 453 (2001). Unchallenged findings of fact are verities on appeal. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

Phillips challenges "Finding of Fact" 16, 17, and 27 arguing substantial evidence does not support the findings. Phillips challenges the findings of fact that address the $1,000,000 payment from A-Dot to Phillips on December 13, 2006, Finding of Fact 16 and Finding of Fact 17. Phillips does not challenge the fact that Banana made a $1,000,000 payment to A-Dot or that he transferred the $1,000,000 to his personal

brokerage account. Phillips appears to challenge the characterization of the $1,000,000

payment and the finding that the payment was "without business justification."

Finding of Fact 16 states:

[On December 13, 2006], Mark Phillips caused A-Dot to pay the aforementioned $1,000,000 to Phillips' personal brokerage account. Phillips has claimed that the $1,000,000 "consulting fee" payment from Banana to A-Dot was actually for "license fees," and not pursuant to the Service Agreement but at the time of the payment of the consulting fee, the intellectual property allegedly licensed had already been assigned by Phillips to Banana in return for stock.

Finding of Fact 17 states:

The self-payment of the $1,000,000 "consulting fee" was without business justification, constituted a related party transaction without an independent board review or approval, self-dealing, and a breach of Phillips' fiduciary duty owed to Banana Corporation.

The findings show the court clearly rejected Phillips's assertion that the

$1,000,000 payment was a license fee. The undisputed testimony supports the finding

that "the intellectual property allegedly licensed had already been assigned by Phillips to

Banana in return for stock." The court expressly found that the $1,000,000 payment

was "without independent board review or approval" and constituted "self-dealing, and a

breach of Phillips' fiduciary duty owed to Banana Corporation." Unchallenged Finding of

Fact 15 supports the conclusion that the payment was without business justification.

Finding of Fact 15 states there are "no records justifying this payment," "no

documentation that Banana ever requested consultation services from A-Dot," and "no

documentation which establishes a scope of consultation services or otherwise

specifically describes the work relationship."

Phillips claims the court incorrectly characterized the $450,000 paid to Lower for consulting fees as a related-party transaction. Finding of Fact 27 states:

> Banana also paid a total of $450,000 in alleged "consulting fees" to Doug Lower on July 5, 2006 and August 28, 2006. These payments were made "in advance," ostensibly based on a consultation agreement between Banana and Lower, signed by Phillips, dated June 28, 2006. That agreement does not describe a work assignment, provides no fee schedule and identifies no rate of pay. There are no invoices to Banana for the $450,000 in consulting fees paid to Lower. Based upon information furnished by Mr. Lower, he was paid approximately $1,000 per hour for every hour he spent working for Banana. There was no apparent Banana business justification for this hourly rate paid to Mr. Lower. The payment of the $450,000 "consulting fee" to Mr. Lower a long-time friend, was without business justification, was done without an independent board review or approval, constituted self-dealing, and constituted a breach of Phillips' fiduciary duty owed to Banana Corporation. Moreover, Mr. Lower was already receiving a salary of $60,000+ from Mod Systems. In contrast to the $450,000 "consulting fee" and $60,000 Mod Systems payment that Mr. Lower received, Kenneth Gordon only received $30,000 from Mod Systems for similar work.

The Estate admits Finding of Fact 27 contains a scrivener's error but as the Estate points out, "Conclusion of Law 2" establishes the court did not identify the consulting fees paid to Lower as a related-party transaction. Conclusion of Law 2 states, in pertinent part:

> The following related-party transactions Mr. Phillips [sic] were entered into on behalf of Banana:
> a.    $1 million consulting fee paid to A-Dot (December 2006);
> b.    $1,160,000 in consulting fees paid to Phillips (up to December 2006);
> c.    $150,000 wire to Phillips controlled entities (October 11, 2006);
> d.    $500,000 wire to Phillips from A-Dot (February 23, 2007);
> e.    $25,000 wire to Phillips from A-Dot (June 22, 2007); and
> f.    $705,000 in two income tax payments for Phillips' personal taxes (2007).

Phillips also challenges Finding of Fact 18 through 25. But it is unclear which portions of Finding of Fact 18 through 25 he challenges or why the findings are

12

incorrect. Phillips also does not present argument on these findings. Under RAP 10.3, an appellant must "present argument to the reviewing court as to why specific findings of fact are in error and to support those arguments with citation to relevant portions of the record." In re Disciplinary Proceeding Against Whitney, 155 Wn.2d 451, 466, 120 P.3d 550 (2005). Accordingly, we decline to address Phillips's challenge to Finding of Fact 18 through 25.

Phillips also claims the court based a number of its findings of fact on inadmissible hearsay. Specifically, Phillips points to the KPMG Report and statements made to van Drunen by Banana employees. The record does not support Phillips's argument.

The court expressly ruled the KPMG Report was not admissible as an exhibit and the court would consider only the portions of the KPMG Report and the testimony of van Drunen admissible under the rules of evidence. The court ruled, in pertinent part:

> So the report itself is not admissible as an exhibit; however, in addition to the report not being admissible as a hearsay document, the report also contains hearsay statements.
> However, the court believes that it can consider the contents of the report, both, through the testimony of Mr. van Drunen, as well as certain aspects of the report, to the extent that the information came from the business records of Banana, A-DOT, or MetaWallet.
> The court can also consider part of the contents of the report to the extent that they contain statements of a party opponent, Mr. Phillips, to the extent that they contained statements of party opponent, A-DOT, through its authorized representatives, specifically, Mr. Gordon and Mr. Phillips, and to the extent that the report contained a summary of information gathered by Mr. van Drunen and his company, pursuant to Evidence Rule 10.06 . . . .
> . . . .
> For those reasons, the [KPMG Report] is not admitted, but the court may consider some of the contents contained therein, based upon the exceptions to the hearsay rule, as noted.

13

Van Drunen testified extensively about the conclusions he reached in the KPMG Report. Banana bookkeeper Kenneth Gordon authenticated the financial documents relied on by van Drunen.

Phillips relies on Finding of Fact 22 to argue the court considered inadmissible hearsay from Banana employees. Finding of Fact 22 states:

> According to the testimony of Mr. van Drunen, none of the above disbursements, "consulting fees," and loans from Banana to A-Dot and from A-Dot to Phillips and others were disclosed in advance or contemporaneously to or approved by Mr. Arnold. This testimony was credible, and was corroborated by the testimony of Mr. Cole Younger and Ms. Julia de Haan, both of whose testimony the court found credible, documentary evidence, and admissions made by Mark Phillips to Mr. van Drunen. Mr. Phillips' testimony to the contrary was not credible.[3]

Phillips claims van Drunen relied on interviews with key Banana personnel to conclude that "none of the above disbursements, 'consulting fees,' and loans from Banana to A-Dot and from A-Dot to Phillips and others were disclosed in advance or contemporaneously to or approved by Mr. Arnold." But van Drunen testified that Phillips admitted he did not disclose the transactions to Arnold.[4]

> Q. And then the fourth bulleted paragraph, "Transactions were entered into by Banana, where Phillips was the sole responsible party for all aspects of the transaction. Examples are a loan to A-DOT, loan to Phillips, consulting fees paid to Phillips, and consulting fees paid to A-DOT. These transactions create clear potential for conflicts of interest.
> "Phillips neither disclosed these transactions to interested parties, nor obtained a fairness opinion with respect to these transactions."
> Where would you have obtained this information?
> A. I believe it would have been during the course of the interview with Mr. Phillips.[5]

---

[3] Emphasis added.

[4] The admission was a statement of a party-opponent under ER 801(d)(2).

[5] Emphasis added.

The court did not base its findings of fact on inadmissible hearsay from the KPMG Report or Banana employees.

Calculation of Damages

Phillips challenges the award of damages. Phillips claims the court erred in concluding his actions resulted in any damages to Banana. Phillips asserts there were no damages because Arnold ratified each of the transactions. The testimony at trial does not support his argument.

Van Drunen testified that Phillips did not disclose, and Arnold did not ratify, any of the transactions. Van Drunen's testimony also established the damage to Banana. Van Drunen testified, in pertinent part:

> Q. If, in fact, the money that was paid to Virgin Galactic had been refunded or was refunded to Banana Corporation, there would be no damage or harm to the company as a result of that; is that correct?
> A. This is $120,000. We're talking about a startup, right?
> Q. Uh-huh?
> A. So a startup runs on cash. If this cash has been used for something else, there is damage to the company because they're short on cash, right? You're always trying to manage a burn right at the start. So if you're using cash for one thing, that means you're robbing Peter to pay Paul. So to say there's no damage, this creates another need for funding, right?

Phillips also argues the trial court incorrectly calculated damages by including amounts Lower owed Banana under the promissory note. Phillips contends that because Arnold settled with Lower, waiver and estoppel preclude Arnold from obtaining a judgment for the amounts Lower owed Banana. But as the Estate points out, the lawsuit did not seek to enforce the Lower promissory note. Instead, the lawsuit alleged the loan to Lower was evidence of breach of fiduciary duty.

Phillips also claims the trial court erred in allowing the Estate to recover the funds loaned in September of 2006 by Banana to A-Dot from Phillips and A-Dot. However, Conclusion of Law 10 expressly states Phillips is entitled to an offset for any amount paid by A-Dot on the promissory note. Conclusion of Law 10 states:

> Based on the foregoing, Judgment shall be entered in the amount of principal amount of $2,335,000 and $760,709.58 in accrued pre-judgment interest against A-Dot Corporation. Post-judgment interest shall accrue at the promissory note rate of five percent (5%). Should A-Dot make payments on this judgment, such payments shall first be applied to accrued and accruing interest, and then against the principal judgment. Phillips shall be entitled to an offset of the judgment against him for such principal payments (set forth in Conclusion 9 above), but not against line items set forth in Conclusions 2.a. and b. above and the amounts set forth in Conclusion 5 above.[6]

Next, Phillips contends the award of damages should not include the $150,000 he wired from A-Dot to himself on October 11, 2006 or the $500,000 he wired from A-Dot to himself on February 23, 2007. Phillips argues that there is no evidence the funds came from Banana. The record does not support his argument.

Exhibit 107 shows that on October 10, 2006, A-Dot received a $175,000 loan from Banana and the next day, Phillips transferred $150,000 of the money from A-Dot to himself. The A-Dot account balance prior to the loan from Banana was $48,872.14. Similarly, exhibit 111 shows that on February 23, 2007, A-Dot received $500,000 from Banana and the same day, Phillips wired $500,000 from A-Dot to his personal account. The amount in A-Dot's account before and after these transactions was $47,304. Substantial evidence supports the finding that the money used for the $175,000 and $500,000 payments came from Banana.

---

[6] Emphasis added.

Phillips also claims he is entitled to a $2,500,000 "credit" for the June 2006 intellectual property license fee. However, unchallenged Finding of Fact 16 states that "the intellectual property allegedly licensed had already been assigned by Phillips to Banana in return for stock."

We conclude the record supports the award of damages against Phillips.

Attorney Fees

The Estate requests attorney fees on appeal under RAP 18.1 against Phillips and A-Dot. The September 1, 2006 promissory note between Banana and A-Dot contains a clause providing for the payment of "reasonable attorneys' fees and expenses [Banana] expends or incurs in connection with the enforcement of this Note." But the Estate did not seek to enforce the promissory note against Phillips, the scope of the appeal as to A-Dot was limited, and A-Dot withdrew its objection to the Estate's motion to dismiss its appeal. We decline to award attorney fees.

We affirm in all respects.

WE CONCUR: